THE TERRITORY OF HAWAII BY C. T. BAILEY, COMMISSIONER OF PUBLIC LANDS; AND TWENTY-FOUR OTHERS *v.* FRANCIS GAY, AUBREY ROBINSON, ALICE ROBINSON, SINCLAIR ROBINSON AND AYLMER F. ROBINSON, PARTNERS DOING BUSINESS UNDER THE FIRM NAME OF GAY & ROBINSON; HAWAIIAN SUGAR COMPANY; McBRYDE SUGAR COMPANY, LIMITED; AND ONE HUNDRED AND THIRTY-THREE OTHERS.

No. 2050.

ARGUED APRIL 5, 1932.          DECIDED APRIL 25, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.
(Banks, J., dissenting.)

In this suit, instituted "in the circuit court of the first judicial circuit, Territory of Hawaii, at chambers, in equity," the Territory of Hawaii and others as petitioners seek to enjoin the respondents Gay & Robinson, co-partners, and the Hawaiian Sugar Company, Limited, a corporation, from maintaining a certain dam and diverting water from the Koula stream which is one of the sources of the Hanapepe river. The allegations of the petition material to be considered in this opinion are substantially as follows: "That from the time of the great Mahele in the year 1846, and theretofore beyond the memory of any person now living, certain lands in said valley of Hanapepe, now the property of the Territory of Hawaii, have received and used and continue to receive and use water from said Hanapepe river as an appurtenant to said land. That the Territory of Hawaii is the owner of 220.72 acres of land entitled to water for irrigation purposes, by ancient custom and usage as aforesaid, and by

reason of said ownership is entitled to the use of water from said Hanapepe river in the amount of approximately 50,000 gallons per acre per day or a total of 11,036,000 gallons in every twenty-four hours;" that the petitioners other than the Territory and four of the respondents are tenants of the Territory with respect to the lands above referred to; that the respondents Gay & Robinson "are the owners of a piece of land situate within said ahupuaa of Hanapepe known as the ili of Koula; that said ili of Koula extends from said peak known as Kawaikini in a southerly direction to a place about five miles north of said Hanapepe Bay near the junction of said ili of Koula and the ili of Manuahi; that the said Hanapepe river and the Hiloa stream have their source near the said Kawaikini, and the eastern branch of said river flows over the entire length of said ili of Koula; that the land known as the ili of Koula is not entitled to water for irrigation purposes;" that the McBryde Sugar Company, respondent, is the owner of 110.65 acres of land in Hana-pepe valley entitled to water for irrigation purposes; that certain of the respondents are owners of land within the same valley entitled to water for irrigation purposes and that certain others of the respondents are owners of town lots in the village of Hanapepe and as such are entitled to water for domestic purposes; that the "Hawaiian Sugar Company, about the year 1900, * * * constructed across the Hiloa stream * * * a cement dam about seventy-five (75) feet in length and about five (5) feet in height on the lower side, and likewise constructed a similar cement dam across the Hanapepe river, also seventy-five (75) feet in length and five (5) feet in height, * * * and by means of said dams and said ditches and flumes" conveyed away from the stream practically all of the water of said Hanapepe river, at the points where the dams are located; that the dams were constructed

and are being maintained with the consent and approval and under the authority of Gay & Robinson, lessors of the Hawaiian Sugar Company; that Gay & Robinson as lessors and the Hawaiian Sugar Company as lessees claim that they are absolutely entitled to all of the waters so diverted; that the waters so diverted "are enormously in excess of the amounts to which said lands of Gay and Robinson or said lands under lease to said Hawaiian Sugar Company are entitled by ancient custom and usage; that a portion of the waters so diverted as aforesaid by said Hawaiian Sugar Company and Gay and Robinson are surplus waters; that not only surplus waters of the Hanapepe river are thus diverted but that the major portion of the waters to which these petitioners and respondents other than Gay & Robinson are entitled by prescription are also diverted by said Hawaiian Sugar Company and Gay and Robinson in the manner hereinabove set forth; that as a result of said diversion, the merest trickle of water is left in the Hanapepe stream below said dams except in times of excessive rainfall; that such artificial drying up of the stream by said dams has deprived petitioners and all of them of the amount of water to which their lands and all of them have been entitled by ancient custom and usage from time immemorial; * * * and that it is the intention of said Gay and Robinson and said Hawaiian Sugar Company to continue to divert the water as aforesaid."

The prayer is that the court grant an injunction "restraining the said Gay and Robinson and the said Hawaiian Sugar Company, their agents, attorneys and servants, from illegally diverting water from said Hanapepe river and from said Hiloa stream" and that Gay & Robinson and the Hawaiian Sugar Company be ordered to destroy the dams "so that the flow of said river and said stream may continue in its natural course." The

prayer is also "for such other and further relief" as to the court may seem meet.

The respondents Gay & Robinson and Hawaiian Sugar Company filed separate demurrers, but upon the same grounds. Those grounds are: that the averments of the bill do not show cause for relief; that the bill is multifarious in joining and confusing two distinct causes of action, one relating to the surplus waters and one relating to waters to which the parties are entitled by prescriptive rights,—the first of these being in controversy only between the Territory on the one hand and Gay & Robinson and the Hawaiian Sugar Company on the other hand, and the other being in controversy between all of the parties named as petitioners and respondents. The petitioners have offered in this court to amend their bill by omitting all allegations relating to surplus water and, were it not for other reasons about to be referred to, should be permitted to do so.

Another ground of demurrer is that the court "has no jurisdiction to determine the matters and things averred in" the bill "which involve the general settlement of the rights of the several parties petitioner and respondent in the waters of Hanapepe valley according to their several holdings and in accordance with ancient right and usage, since such jurisdiction is confided by chapter 172 of the Revised Laws of Hawaii 1925, to the circuit judges only within their respective circuits." A third ground of attack on the bill was presented in argument in the trial court, although not referred to in the demurrers, and that was that, in view of the fact that the lands and the waters involved in this case are situated on the Island of Kauai, in the fifth circuit, and that the owners and the witnesses are resident there and are very numerous, it would be highly unjust, inequitable and oppressive for the circuit judge of the first circuit to maintain juris-

diction and as a matter of justice and equity the controversy should be heard and determined in the fifth circuit.

In 1860, by a short, simple Act (Laws 1860, p. 12), the legislature provided for the appointment by the minister of the interior in each election district of "three suitable persons to act as commissioners of private ways and water privileges" and declared it to be the duty of the commissioners "within their respective districts, to hear and determine all controversies respecting rights of way and rights of water, between private individuals or between private individuals and the government." This provision was repeated in substance in chapter 69 of the Laws of 1886 and in that Act there was a more detailed statement of the powers and duties and procedure of the commissioners. By chapter 26 of the Laws of 1888 the law was amended so that thereafter there would be only one commissioner of private ways and water rights, in place of the three, with substantially the same powers and duties and method of procedure as had been prescribed for the three by the earlier statutes. Act 56 of the Laws of 1907 provided that the word "commissioner" wherever used in that Act should refer to the judge of the circuit court within which the property affected is situated and that "the circuit judges shall have jurisdiction to hear and determine all controversies respecting rights of private ways and water rights." Substantially the same powers were thereby given to the circuit judges in respect to private ways and water rights as had been possessed by the earlier commissioners.

It is now too well established to admit of argument that these legislative grants of power to commissioners of water rights did not deprive courts of equity of such jurisdiction as they theretofore possessed concerning the same subject-matter and that courts of equity, before the creation of these special tribunals, had and now have

jurisdiction to grant injunctions to restrain illegal diversions of water. In *Wailuku Sugar Co.* v. *Cornwell,* 10 Haw. 476, 477, 479, this court said, in 1896: "There must be an explicit expression of the intention of the legislature to make the jurisdiction exclusive. We do not find any such intention in the water rights commission statute. It is affirmative only and does not destroy the jurisdiction in equity. * * * The jurisdiction in equity, in a proper case for equity, exists concurrently with the jurisdiction of the commissioners where controversies respecting water rights are involved. Equity has frequently been resorted to to settle controversies respecting water rights and the jurisdiction has never heretofore been questioned."

In *McBryde Sugar Co.* v. *Koloa Sugar Co.,* 19 Haw. 106, 116, this court said: "*Wailuku Sug. Co.* v. *Cornwell,* 10 Haw. 476, approved in 13 Haw. 195 and 14 Haw. 550, held that the jurisdiction of a commissioner of water rights over a water controversy does not exclude equity jurisdiction over water rights. Act 56, S. L. 1907, giving to circuit judges 'jurisdiction to hear and determine all controversies respecting rights of private ways and water rights' and making it 'the duty of said judges, within their respective circuits, to hear and determine all controversies respecting rights of private ways and water rights,' transfers to circuit judges the jurisdiction in those matters formerly exercised by commissioners of water rights. * * * It was not the intention of the legislature that the jurisdiction of the commissioners should supersede the general jurisdiction of equity over such controversies, but merely that a simple, expeditious and inexpensive tribunal should be created to determine these matters without a jury and without the formal procedure of equity. A water controversy may involve equitable as well as legal rights. It may amount to a mere trespass.

\* \* \* The transfer to circuit judges of the commissioners' previous jurisdiction over water controversies does not do away with their equity jurisdiction in such cases. They now hear and determine water controversies relating to property within their circuits, using the procedure provided by statute for such cases and still have general equity powers which they exercise 'according to the usage and practice of courts of equity' when the parties have not a 'plain, adequate and complete remedy at the common law,' whether the case relates to property within their circuits or not. *Dole* v. *Gear,* 14 Haw. 564." The court further said, in the same case, that the cases of which equity has jurisdiction "include suits concerning nuisance. It is a private nuisance to divert or obstruct a water course." In other words, it there held that equity might restrain the illegal diversion of water to which another was entitled. It also said, "Equity has disposed of numerous important water controversies in this jurisdiction in which questions of legal right were passed upon."

It is equally well settled that courts of equity have jurisdiction, in proper cases, of controversies concerning water rights, even though the lands and waters under consideration are situated in another circuit. Referring to the statutory provision that "the judges of the several circuit courts shall have power in chambers within their respective jurisdictions to hear and determine all matters in equity," this court, in *Wailuku Sugar Co.* v. *Cornwell, supra,* said: "The expression 'within their respective jurisdictions' cannot mean that the *res,* if there happen to be one, must be situate in the territorial boundaries of the particular circuit. *'Equitas agit personam.'* Equity deals with the person, the conscience of the individual, and the *res* may be in even a foreign state. \* \* \* 'The authority of a court of chancery may be exerted whenever the cause

is of equitable cognizance and the parties are within its jurisdiction, although the property in dispute lies beyond it.' * * * It seems to us that, except as limited by the statute, the several circuit judges at chambers have general and concurrent jurisdiction in equity of cases irrespective of the place of residence of either party or the situation of the *res* involved. Their jurisdictions being concurrent, the first court that obtained jurisdiction would retain it."

The circuit judge of the first circuit, therefore, sitting as a court of equity, has jurisdiction to restrain by injunction the illegal diversion of water in a case in which the land involved is situated in the fifth circuit. It is equally clear that when the same circuit judge, of the first circuit, sits as a commissioner of water rights, exercising the powers and performing the duties which prior to 1907 were vested in and were required of persons (not circuit judges) who were commissioners of private ways and water rights and which by the Act of 1907 were transferred to circuit judges, he is limited in his jurisdiction to cases in which the land is situated within his circuit. In the Act of 1860 the statement was that it should be the duties of the commissioners "within their respective districts" to hear and determine the controversies mentioned. This limitation was repeated in the Act of 1886 and again in the Act of 1888. In the Act of 1907, transferring the powers to the circuit judges, the statement was that it shall be the duty of the judges "within their respective circuits" to hear and determine the controversies in question. It seems clear to us that commissioners of water rights, both before and after the Act of 1907, were authorized to hear and determine only those controversies which related to land and waters situated within their respective circuits.

At this point it is claimed by the demurring respond-

ents that it is obvious from the face of the petition that this is a controversy respecting water rights such as is within the jurisdiction of a commissioner of private ways and water rights and that therefore the circuit judge of the first circuit is without jurisdiction, since the land is situated in the fifth circuit. This contention cannot be sustained. If the circuit judge of the first circuit, whose order has been appealed from, had been sitting as a commissioner of water rights, he would be subject to the limitation of jurisdiction relied upon. But he was not sitting in that capacity. The petition is entitled "In the Circuit Court of the First Judicial Circuit, Territory of Hawaii, at chambers, in equity," and is addressed to the first judge, "presiding at chambers in equity." The demurrers likewise are both entitled in the same way, before the circuit judge "in equity." The purpose of the title of petitions and declarations is to show the identity of the court which is being appealed to for relief; and ordinarily the title is determinative in that respect. There may be, of course, instances in which the title is contradictory or ambiguous, when it may be construed in the light of other parts of the petition and of the summons. This, however, is not such a case. There is no ambiguity in the title or in the designation of the court addressed, nor is there any allegation in the bill which is inconsistent with the theory that the petitioners and the respondents both entered the court of equity with their respective pleadings. The mere naming of numerous parties who have or might have controversies each with the others concerning water rights does not militate against this view. There is no prayer for any adjudication of the detailed rights of each and all of the parties. The sole prayer is that the respondents who are maintaining certain dams be required to discontinue the maintenance of those dams in order to allow the water to which the

petitioners are entitled to reach their lands. That prayer tends to confirm the view that the petitioners intended to come into a court of equity and to ask relief of the circuit judge while sitting as a court of equity.

For another reason, however, the order appealed from must be sustained. The circuit judge dismissed the bill upon the ground, among others, that it would be inequitable and oppressive to maintain jurisdiction in the first circuit. The parties complainant and respondent are very numerous. The lands involved in the controversy are situated on the Island of Kauai, in the fifth circuit. The lands involved are likewise numerous. The witnesses may well be and probably are even more numerous than the parties themselves. A trial in Honolulu would entail serious expense to the parties, many of them doubtless being in a position to ill afford such expense. In a water controversy, in order that the judge may properly understand the testimony and other evidence, his presence on the ground is highly desirable, with witnesses also present identifying the different parcels and ditches. If the hearing is had in Honolulu the circuit judge will find it necessary to make one or more visits to the land and it will likewise be necessary for the parties and their witnesses to come to Honolulu and to maintain themselves here for varying periods of time. This court cannot say that in this instance the circuit judge committed an abuse of discretion in declining to take jurisdiction and in leaving the parties to their remedy on Kauai, if he had such discretionary power. In *Hee Fat* v. *Chang Chip*, 25 Haw. 623, this court held that a court of equity has that power. In that case, a suit for the dissolution of a partnership, with the property and the parties and the witnesses on Kauai, this court sustained a ruling by a judge of the first circuit declining to take jurisdiction. The ruling of the judge appealed from and that of this

court were based upon the inequity of continuing the jurisdiction in the first circuit, under the circumstances of that particular case. In our opinion, this is not in conflict with the earlier decisions above referred to which hold that our circuit judges in equity have concurrent jurisdiction and that any one of them may exercise it irrespective of the location of the *res*. The court assumed in the *Hee Fat* case that the judge of the first circuit had jurisdiction, concurrently with the judge of Kauai, but also held that under the existing circumstances he had properly declined to exercise jurisdiction. Courts of equity, like other judicial tribunals, exist for the purpose of doing justice. It would be strange indeed if they did not have the inherent power to decline to take jurisdiction in a case in which the exercise of the jurisdiction would necessarily result in oppression and injustice and when at the same time another court was in existence, of equal powers, which could determine the controversy without any oppression or injustice to anyone. The doctrine of the *Hee Fat* case is not a novel one. It has been referred to as the doctrine of the *forum non conveniens*. It has been applied in various states,—not in cases exactly parallel to that at bar, but in cases in which the same fundamental principles were involved. It has been applied in cases in which by comity American courts had the right to assume jurisdiction when there was also jurisdiction in the courts of a foreign country. It has been applied in cases in which one state court could properly take jurisdiction when the courts of another state likewise had jurisdiction. In each instance the refusal to take jurisdiction has been based upon the fact that some grave injustice and inequity might result or would result from the maintenance of jurisdiction.

The doctrine of *forum non conveniens* has been described as dealing with "the discretionary power of a

court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere." 29 Columbia Law Review, No. 1, p. 1. In a Scotch decision in the case of *Societe du Gaz de Paris* v. *Societe Anonyme de Navigation "Les Armateurs Francais,"* Sess. Cas. (H. L., 1926) 13, the court is said to have stated that the plea is, substantially, "that for the interests of all parties, and for the ends of justice, the cause may more suitably be tried elsewhere." *Ib.,* p. 20. The same writer, in 29 Columbia Law Review 1, says that: "The doctrine in question involves nothing more than an appeal to the inherent powers possessed by every court of justice—powers, that is to say, which are incontestably necessary to the effective performance of judicial functions."

"The court has an inherent jurisdiction to restrain vexatious and oppressive litigation and to prevent the administration of justice being perverted for unjust ends." 6 Halsbury, L. of Eng., 299.

"The courts of equity in this state are not open to the plaintiff as matter of strict right, but as matter of comity." (Nevertheless, the Massachusetts court did possess jurisdiction.) "And if it appears that complete justice cannot be done here, or that the amount involved is small, and the defendant will be subjected to great and unnecessary expense and inconvenience, and that the investigation required will be surrounded, if conducted here, with many and great, if not insuperable difficulties, which all will be avoided, without especial hardships to the plaintiff, if suit is brought against the defendant in the state where he lives, and where the alleged debt was contracted, and where personal service can be made on him, we think that our courts should decline to take jurisdiction." *National Telephone Mfg. Co.* v. *Du Bois,* 165 Mass. 117, 118, 42 N. E. 510. This was reaffirmed

in *Arizona Com. Min. Co.* v. *Iron Cap Copper Co.,* 124 N. E. (Mass.) 281, 282.

For other applications of the same general principle, though under differing circumstances, see *Collard* v. *Beach,* 81 N. Y. S. 619, 621; *Gregonis* v. *P. & R. Coal & Iron Co.,* 235 N. Y. 152, 160; *Bagdon* v. *P. & R. Coal & Iron Co.,* 165 N. Y. S. 910, 911; *Murnan* v. *Railway,* 246 N. Y. 244; *Logan* v. *Bank of Scotland,* 3 A. & E. Ann. Cas. (1 K. B. 141, 1906) 1148; 32 A. L. R. 26, 43, n.

We think that the doctrine of the *Hee Fat* case is founded in justice and equity and that that decision ought not to be overruled. The circuit judge of the fifth circuit, sitting as a court of equity, on the Island of Kauai where the land is, has all of the same powers to hear and determine this controversy which the circuit judge on Oahu possesses and is in a far better position to administer justice.

The mere fact that the judge of the first circuit considered and ruled upon demurrers to the bill and to the amended bills does not render nonexistent his power to decline jurisdiction. Assuming that he had gone farther and had commenced to take testimony before discovering that it would be inequitable and oppressive to continue the trial in Honolulu, it would still be a justifiable and proper exercise of his discretionary power, upon such discovery, to refuse to take further evidence and to decline to hear and determine the issues involved. *Railway* v. *Miller,* 19 Mich. 305, 315; 32 A. L. R. 80, n. It would not be too late even then for the court to refuse to follow a course that would be plainly unjust and oppressive.

The grounds of the demurrer were, in substance, that the equity court in the first circuit lacked jurisdiction because the land was on Kauai and that the bill should be dismissed for the further reason that it was multifarious.

There was no inconsistency in the respondents' adding, in the oral argument, the further ground, for the dismissal of the bill, that gross injustice and oppression would result if the court should hear and determine the suit. Moreover, it would have been proper for the court, upon being satisfied of the inequity and oppression which would result, *sua sponte* to decline, as it did, to take jurisdiction. 29 Columbia Law Review, No. 1, p. 2; 32 A. L. R. 80, n.; *Waisikoski* v. *P. & R. Coal Co.,* 159 N. Y. S. 906, 908.

The order appealed from is affirmed. In order to avoid misunderstanding hereafter, the decree should expressly declare that the dismissal is without prejudice to the right of the petitioners to institute proceedings in another circuit. The cause is remanded to the circuit judge with instructions to file a decree in conformity herewith.

*M. K. Ashford* (*Thompson & Winn* on the briefs) for petitioners.

*A. G. M. Robertson* (*Robertson & Castle* on the brief) for certain respondents.

*H. L. Wrenn* (*Prosser, Anderson, Marx & Wrenn* on the brief) for the Haw'n Sug. Co.

#### DISSENTING OPINION OF BANKS, J.

If the circuit judge had done nothing more than decline to take jurisdiction of the case on the grounds stated by him I would be inclined to agree with the other members of the court that the precedent established by the *Hee Fat* case should be adhered to. This, however, the judge did not do. With full knowledge of the facts, which he derived solely from the pleadings and upon which he concluded that it would be oppressive to have the case tried in the first circuit, he assumed jurisdiction, which under the statute he undoubtedly had a right to

do, and, after deciding other questions that were presented by the pleadings, held that since the case could be more conveniently tried in the fifth circuit than in the first it should be dismissed. Under these circumstances it seems to me to be a legal anomaly to say that a court having complete jurisdiction to hear and determine a cause may, after hearing and deciding a portion of it, decline to proceed further and dismiss the action. The *Hee Fat* case is not a precedent for the view that the trial of a case may be thus divided between two jurisdictions. Moreover, I believe the respondents by appearing generally by demurrer to the complaint (in which demurrer there was no suggestion that the court should decline jurisdiction because of the inconvenience to some of the parties of trying it in Honolulu), and thereby having invoked and obtained the judgment of the court on the questions thus presented, waived the right to ask that the case be dismissed on jurisdictional grounds. It is manifestly inconsistent that they should be permitted to affirmatively acquiesce in the jurisdiction of the court for one purpose and object to it for others. The law is settled beyond question that when a court has no jurisdiction over the person of the defendant for lack of service and he appears generally by demurrer he waives his right to interpose this jurisdictional objection. Since this is indisputably true where a court has no jurisdiction because of lack of power to act, *a fortiori* it is true where the court has clear power to act but in the exercise of its inherent discretion may decline to do so.

For the foregoing reasons I think the decree appealed from should be reversed.