The bill is for a partnership accounting and alleges that: Sielcken, Sorenson and Nielsen formed the partnership of Crossman Sielcken, commission merchants, New York, in 1913; Sielcken owned the capital assets; Sielcken was to have seventy-five per cent. of the profits, Sorenson and Nielson each twelve and a half per cent. The firm dissolved September 30th, 1917; Sielcken died October 8th, 1917, in Germany. He was a resident of Germany and by his last will and testament gave his residuary estate, which includes his interest in the firm, to his widow, Clara Sielcken (now Schwarz), and appointed the now Irving Trust Company of New York executor as to his property in the United States and particularly with respect to the liquidation of the co-partnership. The will was admitted to probate in the surrogate's court of New York county, and letters testamentary *Page 45 
were issued to the trust company. In September, 1930, Nielsen died, a resident of Bergen county, this state, and by his last will and testament he appointed the Chase National Bank of New York executor. Letters testamentary were issued to the bank by the surrogate of the county upon admitting the will to probate. Ancillary letters were issued by the surrogate of New York county. In October, 1930, Sorenson assigned his interest in the firm of Crossman Sielcken to the complainant, who alleges that there has never been a complete accounting of the firm's affairs, and prays for an accounting.
The defendants Sorenson and Mrs. Schwarz have answered. The Irving Trust Company, executor of Sielcken, is not in court; substituted service of process upon it was set aside. 109 N.J. Eq. 397.
The remaining defendant, Chase National Bank, executor of Nielsen, by answer, in lieu of pleas, sets up:
(a) That the complainant is estopped from suing because of the wrongful conduct of his assignor, Sorenson, and because the bill fails to show any moneys due.
(b) The pendency of a prior action in New York between the same parties involving the subject-matter of this suit.
(c) New York is the proper and convenient forum for this action.
(d) Statute of limitations.
(e) A prior stated account, and,
(f) Complete remedy at law.
We will discuss but one of these. New York is the proper and convenient forum, which we regard as all-sufficient and dispositive. The co-partnership was a New York concern; all of its assets, books of account and papers are in New York; the complainant and Mrs. Schwarz are New York residents, and the Irving Trust Company and the Chase National Bank are New York corporations. Sorenson lives in New Jersey, but if the complainant's assignment from him of his interest in Crossman 
Sielcken is absolute, as alleged, Sorenson, although a proper party, for the purpose of discovery, is not a necessary party to this bill. The principal stumbling block to a full and complete accounting of the partnership affairs *Page 46 
in this state is the absence from our jurisdiction of the Irving Trust Company, executor of Sielcken, representing a three-quarters interest in the firm. There can be no decree to bind it; the action is in personam. It is conceivable that the complainant may recover upon an accounting against the Nielsen estate and we have no question that, as to them, this court has jurisdiction of the subject-matter, though not as to the Sielcken estate, for otherwise diversity of citizenship of partners might result in denial of redress, but we are not called upon to exercise that jurisdiction where, as here shown, the forum of the complainant's domicile and that of the responsible defendants is the more convenient for the trial of the cause, has the better facilities, and, because of its jurisdiction over all the parties, may do complete justice, which this court cannot do, in the circumstances. Necessarily, much of the testimony would be taken de bene esse and the accounting would have to be made in New York, where the books of account of the co-partnership are located, to grant the limited relief that this court could extend. The Sielcken estate has been in litigation in the New York courts for some years; in the surrogate's court on the accounting of the Sielcken estate by the Irving Trust Company, executor, in which the deceased's share in the Crossman 
Sielcken partnership was determined; Nielsen and Sorenson were parties, as legatees, true, but nevertheless parties to the accounting. And, presently, in the supreme court of New York, there is pending a suit of the Chase National Bank, executor of Nielsen, against the Irving National Bank, executor of Sielcken, Sorenson, and Mrs. Schwarz, involving an accounting by the Sielcken estate of a million and more dollars alleged to have been received by the estate since the dissolution, in which all these parties are active participants, and which is nearing a conclusion. That case promised an earlier adjustment and settlement of the affairs of Crossman Sielcken than this one, but if that be not the fact there appears to be no valid reason why the litigation brought to this state should not have been presented in that suit, brought on by a cross-action permitted by this code. *Page 47 
Furthermore, we cannot escape the belief that this cause was not brought in this state sincerely to obtain partial relief, but rather to complicate the New York situation. Sielcken, the complainant, is a son of Mrs. Schwarz; he took his stepfather's name. While he alleges that he bought Sorenson's interest in the Crossman Sielcken partnership, he charges Sorenson and Nielsen with unlawfully abstracting from the firm's funds a large sum of money unknown to Sielcken, and to his injury. Why this stultification? Though it does not raise an estoppel and bar the right to a general accounting, it is manifestly against his interest, and why plead it, for it is entirely futile as an avoidance of the defense of laches, if that is the purpose.
While we fully recognize the complainant's right to sue in our courts, and that if he has a sueable right his motives are immaterial, yet, the courts of his own state having full and complete jurisdiction of the subject-matter and of the parties and able to give him more adequate relief than he can hope to get here, we must deny him the use of our aid and require him to find his relief in his own domicile. The courts of his own state have spoken vigorously of intruding suitors wandering into their courts for justice when they can find it as well, if not better, in their own home town at their own doorsteps. In DeWitt v.Buchanan (N.Y.), 54 Barb. 31, the court said:
"I have been unable to discover any principle on which the jurisdiction of the court in such a case as this can be denied; but as a question of policy, there are many reasons why jurisdiction should not be entertained. Unless for special reasons, non-resident foreigners should not be permitted the use of our courts to redress wrongs or enforce contracts, committed or made within their own territory. Our courts are organized and maintained at our own expense, for the use, benefit and protection of our citizens. Foreigners should not be invited to bring their matters here for litigation."
And somewhat more forcefully the court declared itself inCollard v. Beach, 81 N.Y. App. Div. 582, in this language:
"The plaintiff here was a non-resident of this state as was *Page 48 
also the defendant, the occurrence giving rise to the action happened without the state and the wrong, if any were done, was committed in the state in which both parties resided. The habit of importing such litigations as this into this jurisdiction, consuming the time of the courts and requiring the people of the State of New York to bear the burden and expense of trying actions which ought to have been brought in other jurisdictions where the home courts of litigants are open to afford adequate remedies has become a great abuse and a just subject of complaint and protest. If it is to be encouraged, as was said in Hoes v.New York, New Haven and Hartford Railroad Co., 173 N.Y. 441,
the flood-gates of litigation in similar cases will be wide open, if not to establish a new legal industry, at all events to impose upon `our already overworked courts the obligation to try actions imported from a foreign jurisdiction.' Of course, as against foreign corporations, the action would not be entertained for want of jurisdiction. In the case cited the court of appeals strongly reprobated a device by which it was sought to acquire jurisdiction over the foreign corporation in an action of tort, but the remarks quoted apply with equal force to the whole class of actions of the same character whether brought against corporations or natural persons.
"There is no doubt that this court has jurisdiction of an action of this character between non-resident individuals where the wrong or trespass is committed in another jurisdiction, but we decline jurisdiction in actions of this character, even between natural persons. We have acted upon the rule declared inFerguson v. Neilson 11 N.Y. Supp. 524. In Wertheim v.Clergue, 53 App. Div. 124, the cases are cited and commented upon, and from those cases we concluded that there is a fully established rule that the courts of this state in the exercise of a sound judicial discretion will decline jurisdiction between foreigners or non-residents founded upon personal injuries or purely personal wrongs, unless special circumstances are shown to exist which require the retention of jurisdiction."
We, reciprocally, entertain the same sentiment. The bill will be dismissed. *Page 49