S. JAMES HARBRECHT AND HERBERT E. SCHMITZ *v.* ANNA JEAN HARRISON.

No. 2696.

ARGUED AUGUST 9, 1948.                    DECIDED AUGUST 31, 1948.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

(Peters, J., dissenting.)

This is a bill in equity for accounting and for discovery and other incidental relief between nonresident copartners

of a foreign limited partnership which was organized and existing under the laws of the State of Illinois. The partnership's principal place of business was in that state, but the firm also did business elsewhere in the United States and throughout the orient. The bill is brought, after the partnership had been dissolved pursuant to the laws of Illinois, by the petitioners, one a general partner and the other a limited partner, against the respondent, a general partner, who was also the managing partner exclusively entrusted with the assets of the partnership, the conduct of its business and the keeping of its books, accounts and records, either at its principal place of business in Illinois or at her office, the location of which is undisclosed. The substance of the action against the respondent involves her breach of the peculiar trusts and duties arising from the termination of the partnership relation and placed upon her by the articles of limited partnership which are attached to the bill and made a part thereof by reference. So amplified, the bill alleges in effect that the respondent refused on demand to perform her exclusive duty to liquidate the dissolved partnership's assets and from the proceeds to pay its debts, repay to the petitioners the sum of fifty thousand dollars as their contribution of initial capital and distribute to the petitioners one half of the balance as their proportionate share. The bill further contains *inter alia* averments that the respondent concealed from the petitioners the books, accounts and records of the dissolved partnership and the petitioners have no access to them; that discovery is necessary to enable the petitioners to make a full and complete statement of the moneys to which they are entitled and that they have no adequate remedy at law.

Upon service of process, the respondent's attorney appeared specially for the purpose of pleading, and did plead, to the jurisdiction of the equity court. He prayed

that it refuse to entertain the cause of action of the petitioners and that it dismiss their bill upon the grounds that the parties are all nonresidents, the respondent being at the time of service but temporarily in Honolulu en route to the orient; that the partnership involved and its affairs are not and never have been situate in the Territory of Hawaii; that none of its business has ever been conducted, nor are any of its books, accounts and records to be found, in the Territory; that all of its affairs were conducted, and all of its books, accounts and records are, in Illinois or the Philippine Islands; that undue and unnecessary expense will be incurred if the cause is tried in the Territory.

To this plea the petitioners make replication that the respondent has no known permanent residence; that she travels extensively both in the United States and to foreign countries; that the petitioners commenced similar proceedings against her in the State of Illinois which were discontinued without prejudice because of inability to secure personal service; that they are willing to stipulate with the respondent that a discontinuance of the instant proceedings be likewise entered on condition she submit to the jurisdiction of an appropriate Illinois court upon institution of proceedings to try the cause therein.

At the hearing of the plea and replication, the attorney for the respondent stated that he had no authority from her to enter into the stipulation suggested in the replication. The presiding judge at chambers by order of court denied the respondent's plea and required her to answer. From this order the presiding judge allowed the respondent to take an interlocutory appeal.

The appeal challenges the lower court's exercise of jurisdiction only, not the jurisdiction itself. No contention is made under it that the bill does not state a cause of action cognizable in a court of equity nor that the lower

court did not have the discretionary power to take cognizance of the cause stated. In correlation thereto the denied plea is not in the nature of a demurrer but goes to the exercise of jurisdiction over a concededly personal and transitory action which admittedly may be instituted wherever the respondent can be found and served with process, irrespective of where the cause arose or the parties resided. That the lower court did in fact retain its possessed jurisdiction is the gravamen of the respondent's complaint before this court.

To assume possessed jurisdiction over a transitory action between nonresidents was a matter within the lower court's judicial discretion in which broad considerations of the relationship between territory and state or foreign nation govern. (*Territory* v. *Gay,* 32 Haw. 404; *Universal Adjustment Corporation* v. *Midland Bank,* 281 Mass. 303, 184 N. E. 152.) The exercise of that discretion will not be disturbed on review unless the lower court has acted arbitrarily without the employment of its conscientious judgment, exceeded the bound of reason in view of all the circumstances, or ignored rules or principles of law or practice as to result in substantial injustice. (See *Bishop* v. *Pacific Navigation Co.,* 7 Haw. 276; *Wilson* v. *Liliuokalani,* 13 Haw. 466; *McMillan* v. *Peters,* 30 Haw. 148.) The attorney for the respondent contends that there was a plain abuse of discretion in that the lower court ignored and failed to apply the well-recognized doctrine of *forum non conveniens.* Without seriously arguing that substantial injustice resulted therefrom he cites the authority of *Universal Adjustment Corp.* v. *Midland Bank, supra; Sielckens* v. *Sorenson,* 161 Atl. 47; *Carnegie* v. *Laughlin,* 28 A. (2d) 506, and that of *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501, 91 L. ed. 1055. (See also *Koster* v. *Lumbermens Mutual Co.,* 330 U. S. 518.) But these cases all hold either directly or by strong implication that juris-

diction of law or equity must be assumed, if the defendant or respondent, as the case may be, is not subject to process in the state that he claims is the more appropriate and convenient forum, or if therein the statute of limitations has run or the action has become stale. Indeed, nothing less would serve the interests of justice, consistent with the nature of the doctrine as an instrument of justice (see *Williams* v. *Green Bay & W. R. Co.*, 326 U. S. 549), which concept underlies, and is epitomized by, the statement of the Supreme Court in the recent *Gilbert* case on page 506, *supra,* that "In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." Such amenability to process is thus the condition *sine qua non* of the success of any invocation of the doctrine.

In this case it is obvious upon the pleadings that the doctrine does not come into play.

There are to be considered three forums upon the respondent's claim without discrimination between the State of Illinois and the Republic of the Philippines that either is a more appropriate and convenient forum than the Territory of Hawaii. Illinois was the principal place of the partnership's business and the Philippines presumably secondary. It is reasonable to assume therefrom that Illinois as the place of origin is a more appropriate and convenient forum and relatively easier of access to the sources of proof than the Philippines. Conceivably, however, the balance of conveniences might be of equal proportions in which case Hawaii would be geographically the most convenient forum of the three, it being approximately midway between the other two. Be that as it may, the determinative distinction is that Hawaii is the forum of clear amenability to process, neither Illinois nor the Philippines appearing to be. The respondent has no

known permanent residence but travels extensively from place to place within the United States and foreign countries. The reasonable inference, therefore, is that since the cause of action arose she has not been, or within the foreseeable future intends to be, in either Illinois or the Philippines long enough to enable service of process upon her. This is evinced not only by her migratory habit but by her remaining strangely unresponsive to the proposition that she submit to process in Illinois and by not offering to submit to it in the Philippines.

Such being the case, the petitioners had no choice but to bring action in Hawaii where the respondent could be found and served with process, as in fact she was. Nor is there any indication that the petitioners shopped for a forum, or sought to vex, harass or oppress the respondent, but rather that they pursued out of necessity their remedy in what appeared to be the only available forum. Further, they have demonstrated good faith by being willing to discontinue the action and institute one in Illinois, apparently a more convenient forum than the Philippines and admittedly one where the expense of trial would be less than in Hawaii. But to date the respondent has not demonstrated corresponding good faith which, under all the circumstances, renders expedient, if not necessary, a trial in Hawaii, and untenable her ground of undue and unnecessary expense in such a trial.

The record does not establish either that the cause can be more appropriately tried elsewhere or that the respondent is amenable to process in another forum as an essential necessary to any choice between it and the forum of possessed jurisdiction. Consequently in this case upon the pleadings the criteria of choice as furnished by the doctrine of *forum non conveniens* have no efficacy and the grounds of the respondent's plea merely point to the usual concomitants of a transitory action between nonresidents.

The plea thus has no more force than a bare attempt on the part of the respondent to escape accountability. In disposing of it, the case can not be better stated than by adopting the apt language employed in a comparable case that: "Courts are designed to aid those who have wrongs imposed on them rather than assist those charged with the wrong who by migratory character of their business are afforded an easy means to elude the law's process. For all the record discloses this cause was *bona fide* grounded and when this is the case access to the court's process should be easily available. Those entitled to and seeking it should not be compelled to resort to a species of incantation, catch as catch can, or the practice of the arts of Delilah, to effectuate it." (*Hagen* v. *Viney,* 124 Fla. 747, 757, 169 So. 391, 395.)

Aside from considerations of comity and policy that would justify the doctrine of *forum non conveniens* had there been amenability to process in at least two forums, the attorney for the respondent urges that the lower court of equity should have declined to hear the cause for the reason that its decree would be unenforceable against the assets or property of the dissolved partnership which admittedly are all beyond the territorial limits of the Territory. But no authorities are cited for such a novel and, in our opinion, frivolous contention, equity acting *in personam* and dealing as it does with the person and his conscience as an individual even where the *res,* if any, is in a foreign state. (See *Wailuku Sugar Co.* v. *Cornwell,* 10 Haw. 476; *Gerson* v. *Sussman,* 176 Wash. 564, 30 P. [2d] 379.)

This court finds that the lower court manifestly retained jurisdiction as a proper exercise of judicial discretion. The order denying the respondent's plea must, therefore, stand undisturbed. Nothing more need be said. But, should the doctrine of *forum non conveniens* sub-

sequently come into play as it may well do upon the meeting by the respondent of the condition of the offer made by the petitioners, it is proper to point out that the criteria furnished by the doctrine would become controlling, at which time the lower court would have the discretionary power to refuse to exercise further jurisdiction pursuant to the principles of justice enunciated by this court in *Territory* v. *Gay*, 32 Haw. 404, 417, and upon such terms and conditions as within its discretion will best serve the ends of justice. (See *Wendel* v. *Hoffman*, 284 N. Y. 588, 29 N. E. [2d] 664. See also 44 Harvard L. Rev. 41, 50, 51.)

Order affirmed.

*C. A. Gregory* (*Smith, Wild, Beebe & Cades* with him on the briefs) for respondent-appellant.

*E. Z. Buck* (*Lewis, Kimball & Buck* with him on the briefs) for petitioner-appellees.

## DISSENTING OPINION OF PETERS, J.

I respectfully dissent. The sufficiency of the bill of complaint to entitle the petitioners to the relief prayed or any relief was not raised upon the plea to the jurisdiction nor passed upon by the circuit judge. Nor was the question presented or argued in this court by the parties to this appeal. It was not until argument in this court that the question was raised by myself of whether the bill of complaint was sufficient in law to permit the circuit judge to act advisedly upon the plea to the jurisdiction inasmuch as the only allegations of the bill of complaint in support of the prayer for an accounting were that the respondent, in spite of demand, had failed to render an accounting to petitioners or to exhibit to them the books and accounts of the copartnership or to distribute the partnership property and that the bill of complaint failed

to allege that there were firm assets or firm liabilities and that anything was due petitioners from respondent. Implicit in the plea to the jurisdiction was the sufficiency of the bill to justify the court in retaining jurisdiction and refusing to remit the petitioners to the forum of convenience.

Nor has this court by its majority opinion done more than to assume the sufficiency of the bill. Contrary to the statement contained therein, the bill does not allege "in effect" or otherwise any duty on the part of this respondent to perform "peculiar trusts and duties arising from the termination of the partnership relation and placed upon her by the articles of limited partnership." Moreover, the bill does not allege "in effect that the respondent refused on demand to perform her exclusive duty to liquidate the dissolved partnership's assets and from the proceeds to pay its debts, repay to the petitioners the sum of fifty thousand dollars as their contribution of initial capital and distribute to the petitioners one half of the balance as their proportionate share." The bill merely alleges:

"VIII

"That although petitioners have demanded that the said respondent render an accounting to them as such managing partner, and exhibit the books and accounts of said partnership to petitioners for inspection and examination, and distribute the property of the limited partnership belonging to petitioners and each of them, respondent has refused and failed, and continues to refuse and fail to render said accounting or to exhibit said books and accounts or to distribute said partnership property.

"IX

"That the location of said books, papers, documents, records and accounts of said partnership are to your petitioners unknown; that your petitioners are informed and believe, and upon such information and belief allege the

fact to be that respondent has in her possession or under her control numerous books, documents, papers, bank statements and records *relating* to the transaction of said limited partnership which said respondent has retained and concealed, and to which petitioners have no access at the present time * * *" [italics supplied].

The copartnership, out of which this suit arises, was dissolved on July 31, 1947, by the mutual consent of all partners who are parties to this action. Nowhere in the bill of complaint nor in the articles of copartnership, as originally adopted and as subsequently supplemented, are any duties imposed upon any of the partners after dissolution. The copartnership was originally composed of the parties to this suit and one Edward John Harrison, who died on November 6, 1946. Mr. Harrison was designated in the articles of copartnership as the managing partner and it was therein provided that upon his death his wife, Anna J. Harrison, the respondent herein, should be the managing partner. It is true that it was provided by the articles of copartnership, as supplemented, that all "Books of account of the transactions of the firm shall be kept with all other papers, documents and records of the firm at its principal place of business, or at the office of the managing partner, and shall be open to inspection at any time by any partner or his authorized representative. At the end of each calendar year during the existence of the partnership, an inventory shall be taken and an accounting had for the preceding year by independent accountants. The profits or losses disclosed by *such accounting* shall be credited or charged against the respective partners. Statements of profits and losses shall be sent by the managing partner to the other partners each month, together with a statement of cash on hand and of accounts receivable and payable, and also a summary of the trend of the business, including therein an

outline of the major transactions of the firm during such period," but the keeping of the books of account did not devolve upon the managing partner nor was it his or her duty to do anything in respect thereto except to send monthly to the other partners the statements detailed in the last sentence of the preceding quoted excerpt. Moreover, this provision is applicable to books of account and the duties of the managing partner during the existence of the copartnership. The partnership, however, has been dissolved and there is no provision contained in the articles of copartnership, as supplemented, imposing any duty upon the managing partner after dissolution in respect to the books of account of the previously existing copartnership. No greater duty devolved upon this respondent, as the former managing partner, than upon the other partners to provide a place of custody for the books of account of the pre-existing copartnership or retain them in her possession for inspection of her copartners.

Nor was any duty imposed upon the managing partner upon dissolution to make distribution of the partnership assets. The articles of copartnership, as supplemented, make provision of the manner of distribution upon the termination of the partnership and the priority of application. But it is absolutely silent as to upon whom of the partners the duty of making distribution devolved. The dissolution agreement is also silent upon the subject.

But this is not all. The bill of complaint fails to allege that there are firm assets or firm liabilities and that there is anything due petitioners from respondent. Were the parties to this action residents of Hawaii and were the accounting prayed one that arose out of a local copartnership, the bill of complaint might stand muster against general demurrer. But from the absence from the bill of complaint of the allegations to which I refer and I deem essential to the exercise by the circuit judge of his dis-

cretion, the bill is fatally defective. It would be a commendation upon the wisdom of the majority decision were it to ultimately transpire in this case upon the trial, if the case ever goes to trial, that the books of account of the pre-existing copartnership are neither in her possession nor under her control and that there are no firm assets or firm liabilities and there is nothing due petitioners from the respondent. The taking of an accounting to secure that result would hardly conform to the concepts of the rule of *forum non conveniens.* The paucity of the allegations of the bill in the absence of essential allegations entitling the petitioners to seek the intervention of the equity courts of Hawaii would seem to indicate that this respondent is being harassed and annoyed to no good purpose and the Territory should be protected upon the showing made from assuming the expense of litigation by nonresidents that promises no fruitful result.