123 P.3d 1232

**UFJ BANK LIMITED, a Japan corporation, Plaintiff–Appellant,**

v.

**Osamu IEDA and Lots Wako, Inc., a Hawai'i corporation, Defendants–Appellees.**

**No. 25549.**

Supreme Court of Hawai'i.

Dec. 8, 2005.

Andrew V. Beaman and Leroy E. Colombe (of Chun, Kerr, Dodd, Beaman & Wong), on the briefs, Honolulu, for Plaintiff–Appellant.

Nadine Y. Ando and Phillip W. Miyoshi (of McCorriston Miller Mukai MacKinnon LLP), on the briefs, Honolulu, for Defendants–Appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, AND DUFFY, JJ.

situation. *See* majority opinion at 128 n.15, 123 P.3d at 1223 n.15.

Opinion of the Court by MOON, C.J.

Plaintiff-appellant UFJ Bank Limited (UFJ), a Japanese bank, filed suit in the Circuit Court of the First Circuit,[1] seeking to collect a debt owed by Kabushiki Kaisha Lots Wako (KKLW), a Japanese company and a non-party to this action. UFJ sued defendants-appellees Osamu Ieda, who personally guaranteed KKLW's loan, and Lots Wako, Inc. (LWI) [hereinafter, collectively, the defendants], a wholly-owned subsidiary of KKLW that was incorporated in the state of Hawai'i. UFJ appeals from the December 10, 2002 final judgment entered in favor of the defendants pursuant to the August 26, 2002 order granting the defendants' motion to dismiss and denying UFJ's motion for partial summary judgment. UFJ also challenges the circuit court's November 19, 2002 order granting the defendants' motion for attorneys' fees.

On appeal, UFJ contends that the circuit court erred in denying its motion for partial summary judgment and dismissing its verified complaint based upon (a) UFJ's failure to join KKLW as an indispensable party under Hawai'i Rules of Civil Procedure (HRCP) Rule 19(b) (2002), quoted *infra,* and (b) *forum non conveniens* grounds. UFJ also contends that, inasmuch as UFJ's complaint was dismissed "without prejudice," the circuit court erred in awarding attorneys' fees to the defendants.

For the reasons discussed herein, we hold that: (1) the circuit court erred in finding that KKLW is an indispensable party; and, (2) inasmuch as the record is unclear as to whether an available alternative forum existed for UFJ to prosecute its claims against LWI, we remand this case for such determination. Accordingly, we vacate the December 10, 2002 final judgment, including the November 19, 2002 award of attorneys' fees, and remand this case to the circuit court for further proceedings.

## I.  BACKGROUND

### A.  Factual Background

UFJ is a corporation organized under the laws of Japan, with its principal place of

1. The Honorable Sabrina S. McKenna was the presiding judge in this case.

business in Japan. On March 22, 1991, UFJ[2] entered into an "Agreement on Banking Transactions" (the Agreement)[3] in which it loaned an aggregate principal amount of approximately 769,700,000 yen to KKLW. According to the Agreement, KKLW was obligated to, *inter alia:* (1) repay the loan; (2) pay damages at the rate of fourteen percent per annum in the event of a default, pursuant to Article 3(2) of the Agreement;[4] and (3) provide additional security, if demanded by UFJ, pursuant to Article 4(1) of the Agreement.[5]

> Article 14 of the Agreement specifically provides that:
>
> In the event that it becomes necessary to litigate in connection with any transaction governed by this Agreement, [KKLW] agree[s] that the competent court shall be the court having jurisdiction in the locale of the head office of Sanwa Bank [ (UFJ) ] or _____ the Branch of [UJF].

On March 19, 1991, two days prior to the execution of the Agreement, Ieda, a stockholder and representative director of KKLW, executed a personal guaranty for KKLW's obligations under the Agreement (the Guaranty). Specifically, the Guaranty states in pertinent part:

> The Guarantor [ (*i.e.,* Ieda) ] hereby undertakes to guarantee, jointly and severally with [KKLW], any and all present and future obligation incurred by [KKLW] with respect to [UFJ] ... pursuant to any

transaction provided for under [the] Agreement ... and[,] in performing on said obligation, the Guarantor shall abide by all of the terms and conditions contained in said Agreement[.]

On September 29, 2000, KKLW executed a promissory note in the face amount of 769,700,000 yen (the Note). The entire balance on the Note became due and payable to UFJ on January 30, 2001 when, by its terms, the Note matured. On September 20, 2001, KKLW allegedly made a payment of 502,302,136 yen.

According to UFJ, KKLW and Ieda owed the outstanding amount of 1,527,532,274 yen, or approximately $11,892,037.94 U.S. dollars, as of April 15, 2002. UFJ also contends that, since April 15, 2002, interest has continued to accrue at a rate of 486,125 yen per day, or approximately $3,784.55 U.S. dollars per day, as provided in Article 3(2) of the Agreement. As of July 8, 2002, an additional 40,834,500 yen allegedly had accrued, and the total amount owed by KKLW and Ieda to UFJ on that date was 1,568,366,774 yen.

On May 23, 2002, UFJ notified KKLW, Ieda, and LWI that it was exercising its right of subrogation with respect to an "Inter–Company Debt," pursuant to Article 423 of the Japan Civil Code, which provides a right of subrogation,[6] and demanded payment of UFJ's loan. According to UFJ, the Inter–Company Debt was a loan extended by

---

2. UFJ was formerly known as Sanwa Bank, Limited, having changed its name in January 2002.

3. It should be noted that all of the loan documents entered into between UFJ and KKLW and Ieda were translated from Japanese into English for purposes of this litigation.

4. Article 3(2) of the Agreement provides:

> In the event that [KKLW] fail[s] to perform on any of [its] obligations with respect to Sanwa Bank [ (UFJ) ], [KKLW] shall pay [UFJ] damages at the rate of 14% per annum for any amounts due and payable. In such case, damages shall be calculated on a per diem based on a 365–day year.

5. Article 4(1) of the Agreement provides:

> In cases in which reasonable cause necessitates the preservation of [UFJ]'s rights, [KKLW] shall, upon demand, forthwith furnish to [UFJ] such security or additional security, or

such guarantors or additional guarantors, as may be approved by [UFJ].

6. In an affidavit attached to UFJ's *ex parte* motion for prejudgment writ of attachment, Akihito Katayama, an attorney duly licensed to practice in Japan, attests that, under Japanese law, the creditor/obligee has a right of subrogation in accordance with Article 423. Specifically, Katayama avers that:

> Article 423 ("Obligee's subrogation for protection of an obligatory right") provides as follows:
>
> (1) In order to protect his obligatory right, an obligee may exercise the rights belonging to the obligor; however, this shall not apply to such rights as are personal to the obligor.
> (2) So long as the obligatory right is not yet due, the obligee may not exercise the rights referred to in the preceding paragraph except by judicial subrogation, however, this shall not apply to an act of preservation.

KKLW to LWI (of which Ieda is president and director) in the principal amount of 1,364,109,632 yen. UFJ had obtained information regarding the inter-company loan from KKLW's financial statements for the fiscal year ending May 31, 2000, the most recent statements available to UFJ. In their answer to the verified complaint, the defendants neither admitted nor denied the existence of the inter-company loan, stating only that "what is described in [UFJ's verified complaint] as 'Inter–Company Debt' involved funds that were used to acquire the leasehold interest in an office building located at 345 Queen Street, Honolulu, Hawai'i" (the Queen Street Property). The defendants also conceded that LWI owns the single-family residence located at 1610 Ihiloa Loop, Honolulu, Hawai'i, where Ieda resides. The defendants did not respond to UFJ's May 23, 2002 demand for payment.

### B. *Procedural Background*

On May 28, 2002, UFJ filed the instant suit in the First Circuit Court against Ieda and LWI. UFJ's verified complaint contained three claims for relief: (1) Count I sought recovery directly from Ieda for the amount of KKLW's purported indebtedness pursuant to the Guaranty; (2) Count II alleged UFJ's entitlement to additional security from Ieda as guarantor; and (3) Count III asserted a right of subrogation against LWI for the amount of the "Inter–Company Debt" and any other obligations that LWI may have to KKLW pursuant to Japanese law and its civil code. Simultaneously with its filing of the complaint, UFJ filed an *ex parte* motion for prejudgment writ of attachment, seeking to attach the Queen Street Property. On June 4, 2002, the circuit court granted UFJ's motion without a hearing. The writ of attachment was issued on June 5, 2002. On June 6, 2002, the defendants filed an *ex parte* motion, seeking reconsideration of the circuit court's order granting UFJ's motion for writ of attachment. The circuit court granted the defendants' motion for reconsideration on June 13, 2002 and ordered, among other things, that the writ of attachment against the Queen Street Property be released. Thereafter, on June 18, 2002, the defendants filed their answer to the verified complaint.

On July 19, 2002, UFJ filed a motion for partial summary judgment as to Count I against Ieda. UFJ argued that it was entitled to summary judgment, as a matter of law, because there was no genuine dispute as to any material fact that (1) Ieda had given a valid Guaranty of KKLW's obligations to UFJ and (2) KKLW was now in default on those obligations.

On the same date, July 19, 2002, the defendants filed a motion to dismiss UFJ's verified complaint, pursuant to, *inter alia,* HRCP Rules 12 and 19, quoted *infra.* The defendants contended that (1) the mandatory forum selection clause in the Agreement, *i.e.,* Article 14, along with the Guaranty's requirement that "the Guarantor shall abide by all of the terms and conditions contained in [the] Agreement[,]" required dismissal because any action against Ieda must be taken in Japan and (2) the alleged right of subrogation against LWI could not be exercised in the absence of KKLW as a party pursuant to HRCP Rule 19.

Both motions were set for hearing on August 6, 2002. At the hearing, the circuit court invited the parties to file additional memoranda on the issue of choice of law with respect to the forum selection clause and continued the hearing until August 19, 2002.

On August 9, 2002, the defendants and UFJ filed their respective supplemental memoranda pursuant to the court's instruction. The defendants argued for the first time that the circuit court should not preside over UFJ's action under the doctrine of *forum non conveniens.* UFJ countered that the defendants had waived such affirmative defense because they did not assert it in their answer. The defendants, however, responded that the *forum non conveniens* defense was merely a subset of an improper venue defense, which was asserted in the defendants' answer to the verified complaint.

After a further hearing on both motions on August 26, 2002, the circuit court entered an order granting the defendants' motion to dismiss and denying UFJ's motion for partial summary judgment. In its written order, the circuit court stated the grounds for

granting the defendants' motion to dismiss as follows:

(1) based on HRCP Rule 19(b), under the circumstances of this case, including the claims and defenses raised, [KKLW] is an indispensable party without which the court cannot in equity and good conscience proceed based on the factors outlined in said HRCP Rule 19(b); and (2) based on *forum non conveniens* grounds, pursuant to [Hawai'i Revised Statutes (HRS)] Section 603–37.5 [(1993) [7]] and the various factors as outlined in *Lesser v. Boughey*, 88 Hawai'i 260, [ ] 262–64[, 965 P.2d 802, 804–06] (1998).

The order further stated that "dismissal is, of course, without prejudice to any claims [UFJ] may bring against [the defendants] after their claims have been reduced to Judgment in Japan."

On September 17, 2002, the defendants moved for an award of attorneys' fees, pursuant to HRS § 607–14 (1993),[8] and submitted a bill of costs. The defendants, although recognizing that the matter had not been determined "on the merits," argued that they were entitled to attorneys' fees and costs because the determination of a "prevailing party" in an action in assumpsit does not require "a judgment on the merits," relying upon *Blair v. Ing*, 96 Hawai'i 327, 331, 31 P.3d 184, 188 (2001) (stating that "a defendant who succeeds in obtaining a judgment of dismissal is a prevailing party for the purpose of fees under HRS § 607–14"). UFJ objected, contending that an award of attorneys' fees is premature and inappropriate because the defendants cannot be considered the "prevailing party" where the dismissal of the action was expressly "without prejudice."

At the October 7, 2002 hearing on the motion, the circuit court expressed its concern "whether Hawai'i law would apply or whether it should be Japan law … and [that it was] not sufficiently familiar with Japan law on this issue [regarding the award of attorneys' fees]." The circuit court, therefore, requested further briefing. Subsequently, on October 14, and October 21, 2002, the defendants and UFJ filed their respective supplemental memoranda.

At the second hearing on October 28, 2002, the circuit court granted the defendants' motion for attorneys' fees and costs "based on the law cited by the [defendants,]" *i.e.,* *Blair* and HRS § 607–14. The court's written order, awarding the defendants attorneys' fees in the amount of $75,000, was filed on November 19, 2002. Therein, the court stated:

The motion is GRANTED to the extent the court awards $75,000 as reasonable attorneys' fees in favor of the Defendants and against [UFJ]. The motion is DENIED to the extent it requests additional attorney's fees and to the extent it requests costs, for which no substantiation was provided.

On December 10, 2002, the circuit court entered final judgment in favor of the defendants and against UFJ. On December 20, 2002, UFJ filed a timely notice of appeal.[9]

---

7. HRS § 603–37.5 provides in relevant part: "(a) The circuit court of a circuit in which is commenced a civil case laying venue in the wrong circuit shall transfer the case, upon or without terms and conditions as the court deems proper, to any circuit in which it could have been brought, or if it is in the interest of justice dismiss the case."

8. Section 607–14 provides in relevant part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment,.... The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

9. Since the filing of this appeal, UFJ has obtained a judgment against KKLW from a Japanese court. As a result, there is now pending in the First Circuit Court a special proceeding, filed pursuant to the provisions of HRS chapter 658C, the Uniform Foreign Money–Judgments Recognition Act, with respect to said judgment.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

#### 1. Forum Non Conveniens

"This court has long recognized that it is inappropriate to disturb a [circuit] court's order granting a motion to dismiss the complaint on the grounds of *forum non conveniens* unless the trial judge committed an abuse of discretion." *Lesser*, 88 Hawai'i at 262, 965 P.2d at 804 (citing *Territory v. Gay*, 32 Haw. 404, 414 (1932); *Harbrecht v. Harrison*, 38 Haw. 206, 209 (1948)). "The [circuit] court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Ranger Ins. Co. v. Hinshaw*, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003) (citation omitted). Stated differently, an abuse of discretion occurs where "the [circuit] court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Roxas v. Marcos*, 89 Hawai'i 91, 115, 969 P.2d 1209, 1233 (1998) (citation omitted).

#### 2. Failure to Join an Indispensable Party

We review the circuit court's decision to dismiss for failure to join an indispensable party for abuse of discretion. *Takabuki v. Ching*, 67 Haw. 515, 529, 695 P.2d 319, 328 (1985); *Yip Lan v. Ahulii*, 23 Haw. 307, 312 (1916); *see also Washington v. Daley*, 173 F.3d 1158, 1165 (9th Cir.1999) ("We review dismissals pursuant to Rule 19 for an abuse of discretion." (Citation omitted.)); *Walsh v. Centeio*, 692 F.2d 1239, 1243 (9th Cir.1982) (holding that "the determination whether the action should proceed without the absentee, and therefore, the determination of indispensability itself under [HRCP] Rule 19(b)['s federal counterpart], remains in the sound discretion of the trial judge").

### B. Attorneys' Fees

We review the circuit court's grant or denial of attorney's fees under the abuse of discretion standard. *Price v. AIG Hawai'i Ins. Co., Inc.*, 107 Hawai'i 106, 110, 111 P.3d 1, 5, *reconsideration denied*, 107 Hawai'i 106, 111 P.3d 1 (2005); *Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co.*, 100 Hawai'i 97, 120, 58 P.3d 608, 631 (2002) (citations omitted).

## III. DISCUSSION

### A. Motion to Dismiss

As previously stated, UFJ contends that the circuit court erroneously dismissed its claims against the defendants on the grounds of failure to join an indispensable party and *forum non conveniens*. We address each of UFJ's contentions in turn.

#### 1. Indispensable Party

UFJ argues that KKLW is not a "party to be joined if feasible" (or a "necessary" party) pursuant to HRCP Rule 19(a) because (1) the principal obligor, KKLW, is not an indispensable party in an action against the guarantor, Ieda, of a debt, and (2) a subrogor [ (in this case, KKLW) ] is not an indispensable party to a subrogee's [ (UFJ's) ] action against the subrogor's debtor [ (LWI) ].

HRCP Rule 19 provides in relevant part: **JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION.**

**(a) Persons to be joined if feasible.** A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Dismissal pursuant to HRCP Rule 19 involves a two-part analysis. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir.1996) (applying HRCP Rule 19's federal counterpart Rule 19). Initially, the circuit court

must determine whether the absent party is a "necessary" party and, if so, "the court shall order that [the person] be made a party." HRCP Rule 19(a). "Where joinder is feasible, the court need not proceed under Rule 19(b) to determine whether to proceed or dismiss for lack of an indispensable party." *Lau v. Bautista*, 61 Haw. 144, 154–55, 598 P.2d 161, 168 (1979). Although the circuit court did not expressly make the initial determination that KKLW is a necessary party under HRCP Rule 19(a), we believe that such determination can be logically inferred from its ultimate ruling that "KKLW is an indispensable party without which the court cannot in equity and good conscience proceed based on the factors outlined in said HRCP Rule 19(b)[.]"

Under HRCP Rule 19(b):

If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

■ Because UFJ based its subrogation action against LWI solely on Article 423 of the Civil Code of Japan, our determination as to whether KKLW is a necessary and indispensable party to the subrogation claim involves the examination of the substantive law of Japan. "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Hawai'i Rules of Evidence. The court's de-

termination shall be treated as a ruling on a question of law." HRCP Rule 44.1 (2002).

As previously noted, Article 423 of the Civil Code of Japan provides:

(1) In order to protect his obligatory right, an obligee may exercise the rights belonging to the obligor; however, this shall not apply to such rights as are personal to the obligor.

(2) So long as the obligatory right is not yet due, the obligee may not exercise the rights referred to in the preceding paragraph except by judicial subrogation, however, this shall not apply to an act of preservation.

In his book regarding the general rules of the Japanese law of obligations, Professor Hiroshi Oda [10] explains that the concept of subrogation was imported into the Civil Code of Japan from civil law countries and was based, in part, on the French concept of *action subrogatoire*. Hiroshi Oda, *Japanese Law: General Rules of the Law of Obligations*, 177–78 (2d ed., Oxford Univ. Press 1999). He further states that

[i]n an *action subrogatoire*, the obligee may exercise a right which belongs to the obligor in order to ensure performance of a monetary obligation by the latter (Art. 423, para.1). For example, A lent one million yen to B and the repayment is due. B, in turn, had lent half a million yet to C some years ago, but failed to remind C, since he was aware that once he received the money from C, he would have to repay it to A. B does not have any other assets. In such a case, A may exercise B's right against C, and thus prevent prescription.

The *action subrogatoire* was designed to be a state preceding civil enforcement, but today, by substitution, the same effect as civil attachment can be achieved in some cases. In the above example, obligee A has two alternatives. First, he may sue B and obtain an enforcement judgment against B, attach B's right against C, and then demand payment from C. Secondly, *he may simply substitute B and claim payment directly from C. Initially, C was required to repay the debt to B, not A.*

---

10. Hiroshi Oda is an attorney at law duly licensed in Japan and a professor of Japanese Law at the University of London and College d'Europe.

*However, by the judgment of the Supreme Court in the 1930s, obligees were allowed to claimed performance directly from the third party (in this example, C).*

(Emphasis added.) According to Katayama's affidavit, *see supra* note 6:

There have been numerous cases in which Japanese courts have supported the obligee's exercise of its right to subrogation. For example, in *The Country of Japan v. Yoshino,* Supreme Court, June 24, 1966 (23 Minshu 1079), a creditor, the Country of Japan, had sales credits from an insolvent debtor that was owed capital contributions by its incorporators. The creditor exercised its rights of subrogation with respect to the debtor's right to the capital contributions. The Supreme Court of Japan, based on Article 423 of the Civil Code of Japan, held that a creditor can subrogate the right of the debtor to payment from a third party, up to the amount the debtor owes to the creditor. In addition, in *Senri Kabushiki Kaisha v. Itoh,* Osaka High Court, July 21, 1999 (Hanrei-jiho 1698–142), the Osaka High Court allowed a bankruptcy creditor to exercise its subrogation right with respect to the bankrupt debtor corporation's right to compensation of its damages against its directors.

Because Japan law permits UFJ to "step into the shoes" of KKLW and demand payment *directly* from LWI, it cannot be said that KKLW is a necessary party inasmuch as complete relief *can* be accorded among those already parties to the action, *i.e.,* UFJ, Ieda, and LWI. Accordingly, we hold that the circuit court abused its discretion in dismissing the verified complaint based upon UFJ's failure to join KKLW as a necessary and indispensable party in the subrogation action against LWI.

## 2. Doctrine of *Forum Non Conveniens*

### a. *waiver*

Relying on HRCP Rule 12(h)(1), UFJ argues that the defendants waived their right to assert *forum non conveniens* because they failed to specifically raise it in their answer to the verified complaint or in their motion to dismiss, as required by HRCP Rule 12.

HRCP Rule 12(b) provides in pertinent part:

*Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading* thereto if one is required, *except that the following defenses may at the option of the pleader be made by motion:* (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

(Emphases added.) HRCP Rule 12(h)(1) provides that

*[a] defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived* (A) if omitted from a motion in the circumstances described in subdivision (g)[,[11]] or (B) if it is neither made by motion under this rule [as prescribed in Rule 12(b)] nor included in a responsive pleading or amendment thereof permitted by Rule 15(a) to be made as a matter of course.

(Emphasis added.)

As is evident from an examination of Rule 12(h)(1) above, *"forum non conveniens"* is not one of the specifically enumerated "defenses" that may be deemed waived for failure to raise it in a responsive pleading or Rule 12(b) motion.

██ However, as previously indicated, the defendants maintain that *forum non con-*

---

11. Subdivision (g) of Rule 12 provides in relevant part:

If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion [pursuant to Rule 12(b)], the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof [relating to the defense of failure to state a claim upon which relief can be granted] on any of the grounds there stated.

*veniens* is a subset of an improper venue defense. We, therefore, examine the defendants' characterization. Generally, the doctrine of *forum non conveniens* may only apply in cases where "the court in which the action was brought has both subject matter and personal jurisdiction and is a proper venue." 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3828, at 287 (2d ed.1986); *see also Am. Dredging Co. v. Miller,* 510 U.S. 443, 448–49, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (indicating that, for the doctrine to apply, venue must already be proper); *Timberlane Lumber Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 549 F.2d 597, 616 (9th Cir.1976), *superseded by statute on other grounds, McGlinchy v. Shell Chem. Co.,* 845 F.2d 802 (9th Cir.1988) (noting that in applying doctrine of *forum non conveniens,* proper venue is assumed). Consequently, *forum non conveniens* cannot be said to fall within the scope of the defense of improper venue. Moreover, as stated *supra, forum non conveniens* is not one of the defenses enumerated in Rule 12(h)(1) that may be deemed waived for failure to raise it in the responsive pleading or Rule 12(b) motion.[12]

### b. *the convenient forum*

As previously stated, the circuit court dismissed UFJ's complaint based upon, *inter alia,* "*forum non conveniens* grounds, pursuant to . . . the various factors as outlined in *Lesser* [.]" UFJ contends that the circuit court abused its discretion by not enumerating which of the "various factors" it relied upon or how it applied those factors in reaching its conclusion.

In *Lesser,* this court described the doctrine of *forum non conveniens* as

the discretionary power of a court to decline to exercise a possessed jurisdiction whenever it appears that the cause before it may be more appropriately tried elsewhere. *For the doctrine to apply, therefore, an alternative forum must exist and the defendant must be amenable to process in the alternative forum.*

*Lesser,* 88 Hawai'i at 262, 965 P.2d at 804 (emphasis added) (citations and internal quotation marks omitted); *see also* Restatement (Second) Conflict of Laws § 84 (1971) ("A state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action provided that a more appropriate forum is available to the plaintiff."). We, therefore, first assess whether an adequate alternative forum is available to UFJ for litigating this action against Ieda and LWI. *See Lesser,* 88 Hawai'i at 262, 965 P.2d at 804; *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh'g denied,* 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982).

An alternative forum ordinarily exists when *all* defendants are amenable to service of process in the foreign forum. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1143 (9th Cir.2001) (holding that alternative forum was available because *all* defendants had indicated that they would be amenable to service of process in New Zealand); *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir.2000) ("A foreign forum is available when the *entire case and all parties* can come within the jurisdiction of that forum." (Emphasis added.)). A defendant's agreement to submit to personal jurisdiction of the foreign country satisfies this requirement. *Lockman Found. v. Evangelical Alliance Mission,* 930 F.2d 764, 768 (9th Cir. 1991) (citation omitted).

In the instant case, it is unclear from the record whether Japan, the proposed alterna-

---

**12.** We note that, in dismissing UFJ's complaint, the circuit court also relied upon HRS § 603–37.5, which provides the mechanism by which civil cases "laying venue in the wrong circuit" can be transferred, or in the interest of justice, allows the circuit court to dismiss the case. *See supra* note 7. Although on its face, HRS § 603–37.5 appears inapplicable to the present situation, UFJ does not challenge the court's reliance on the subject statute and, thus, we need not

address it. Hawai'i Rules of Appellate Procedure Rule 28(b)(7) (2002); *Ass'n of Apartment Owners of Maalaea Kai, Inc. v. Stillson,* 108 Hawai'i 2, 16, 116 P.3d 644, 658 (2005); *Pele Defense Fund v. Paty,* 73 Haw. 578, 613, 837 P.2d 1247, 1268 (1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993) ("Issues not properly raised on appeal will be deemed to be waived." (Citations omitted.)).

tive forum, has jurisdiction over all of the defendants. However, with respect to Ieda, he is a citizen of Japan as UFJ asserted in its complaint. As the guarantor of KKLW's obligations under the Agreement, Ieda specifically consented to the jurisdiction and venue of the "court having jurisdiction in the locale of the head office of" UFJ or any of its branches, Agreement, Art. 14, when he executed the Guaranty, agreeing to "abide by all of the terms and conditions contained in said Agreement[.]" Further, at the hearing on the motion to dismiss, Ieda's counsel stated that "[Ieda] is considered a Hawai'i resident because he spends so many days a year here, but he spends *roughly the same amount of time in Japan.* We don't anticipate that they would have any trouble serving him with process...." (Emphasis added.) Therefore, because Ieda is amenable to service of process in Japan, an alternative forum for the dispute existed in Japan.

■■■ However, dismissal of UFJ's complaint based on *forum non conveniens* grounds would be inappropriate if the only other defendant in this case, LWI, is not amenable to suit in Japan. We cannot determine from the record whether Japan could be an alternative forum for UFJ's claim against LWI. Because that determination involves a factual finding that is not contained in the record before us, we are compelled to hold that the circuit court abused its discretion in dismissing UFJ's complaint on *forum non conveniens* grounds.[13]

### B. *UFJ's Remaining Contentions*

In light of our holding today, we need not address UFJ's contention that the circuit court erroneously denied its motion for partial summary judgment. Our holding today also dictates that we vacate the November 19, 2002 order granting the defendants' motion for attorneys' fees as premature.

### IV. *CONCLUSION*

Based on the foregoing, we vacate the First Circuit Court's December 10, 2002 final

judgment and the November 19, 2002 award of attorneys' fees and remand this case to the circuit court for further proceedings consistent with this opinion.

---

**13.** Although the parties dispute whether the forum selection clause in Article 14 of the Agreement is mandatory or permissive, we need not address this matter because the circuit court did not rely upon this basis in dismissing UFJ's complaint.