**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: MARGERY KANAMU-
KALEHUANANI KEKAUOHA-ALISA,
                              *Debtor,*

---

MARGERY KANAMU-KALEHUANANI
KEKAUOHA-ALISA,
                              *Appellant,*

v.

AMERIQUEST MORTGAGE COMPANY;
JPMC SPECIALTY MORTGAGE, LLC,
FKA WM Specialty Mortgage,
LLC,
                              *Appellees.*

No. 09-60019

BAP No.
HI-08-1166-JuPaD

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Dunn, and Jury, Bankruptcy Judges, Presiding

Argued and Submitted
February 15, 2012—Honolulu, Hawaii

Filed March 26, 2012

Before: Alfred T. Goodwin, Stephen S. Trott, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Trott

---

## COUNSEL

Lissa D. Shults and Bradley R. Tamm, Shults & Tamm, ALC, Honolulu, Hawaii, for the appellant.

Paul Alston and Tina L. Colman, Alston Hunt Floyd & Ing, Honolulu, Hawaii, for the appellees.

---

## OPINION

TROTT, Senior Circuit Judge:

This case requires us to determine whether a mortgage company violated Hawaii state law when it did not publicly

announce the postponement of a foreclosure sale of property owned by Appellant Margery Kanamu-Kalehuanani Kekauoha-Alisa, and if so, to ascertain the proper remedy for that violation. A federal bankruptcy court held that Appellees' failure publicly to announce the foreclosure violated the requirements of Hawaii's nonjudicial foreclosure procedure under Hawaii Revised Statute (HRS) § 667-5, as well as its consumer protection law, HRS § 480-2. The court voided the sale of the Appellant's property and awarded her treble damages of $417,761.66 under HRS § 480-13 for violation of the consumer protection statute. The Bankruptcy Appellate Panel reversed, ruling that the mortgagee's actions did not violate state law.

We hold that (1) the lack of public announcement did violate Hawaii's nonjudicial foreclosure statute, and (2) this defect was a deceptive practice under state law. Accordingly, we affirm the bankruptcy court's avoidance of the foreclosure sale. However, we remand to the bankruptcy court for a proper calculation of attorneys' fees and damages under HRS § 480-13.

## I  BACKGROUND

In 2002, Margery Kanamu-Kalehuanani Kekauoha-Alisa (Debtor) refinanced a mortgage on her property on Hawaii Island and executed a promissory note to Ameriquest Mortgage Company in the amount of $127,500. Debtor defaulted on her loan eight times, causing Ameriquest to initiate foreclosure proceedings in early 2005. On April 6, 2005 Ameriquest assigned its interest in the mortgage to WM Speciality Mortgage LLC, which later became JPMC Mortgage, the named party in this action. The assignment notwithstanding, Ameriquest continued to service Debtor's mortgage (hereafter, Ameriquest and JPMC Mortgage are referred to collectively as "Lenders"). A foreclosure sale was scheduled for May 13, 2005.

On May 10, 2005, three days before the scheduled foreclosure sale, Debtor filed for Chapter 13 bankruptcy, triggering an automatic stay of the sale. To comply with the stay, a law firm employed by Lenders postponed the scheduled foreclosure sale. HRS § 667-5[1] authorizes a foreclosure sale to be "postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf." The law firm properly announced the postponement of the sale three times from May 13, 2005 until September 23, 2005.

On September 23, 2005, the law firm attempted to postpone the sale yet again, a fourth and final time. The auction was scheduled to occur at noon at a flagpole located in front of Hale Halewai, a local community center. The firm delegated the task to a legal secretary who had never before postponed a foreclosure sale. The secretary arrived ten or fifteen minutes before noon. Rather than shouting out the postponement to all those present, the secretary asked several of the people present if they were interested in Debtor's property. Everyone she spoke to said they were not. She did not attempt to speak to those individuals who appeared to be there for another auction that was occurring at the same time, and she did not speak to everyone in the area. She did not tell those she spoke with that the auction was postponed to December 2, 2005. The secretary stayed at the flagpole until approximately 12:25 PM, after the other auction had finished and the area was deserted. She left without ever announcing or posting the information that the sale of Debtor's property had been postponed.

On November 1, 2005, Lenders moved for relief from the stay to allow them to proceed on the foreclosure sale. On November 21, after Debtor failed to respond, the bankruptcy court granted Lenders' motion. The foreclosure sale took

---

[1]We refer throughout this opinion to the version of HRS § 667-5 in effect at the time of the foreclosure. In 2008, § 667-5 was reordered, but the content was not changed.

place on December 2. The successful — and only bid — was a credit bid made by the auctioneer on behalf of Lenders. A quitclaim deed to the property was recorded on December 27, 2005. Lenders initiated an ejectment action in state court in January, 2006. Lenders obtained a judgment in their favor on April 11, 2006, which Debtor appealed. That appeal is still pending in state court — apparently waiting for our decision.

On April 26, 2006, Debtor filed a complaint in the bankruptcy court, alleging, inter alia, that the sale had violated the automatic stay, breached the terms of the mortgage contract, constituted an unfair and deceptive trade practice under HRS § 480-2, violated various requirements of nonjudicial foreclosure procedure under HRS § 667-5, and constituted a fraudulent transfer under HRS § 651C-7. The bankruptcy court dismissed on summary judgment Debtor's claims alleging a violation of the stay and fraudulent transfer.

After a five-day bench trial on the remaining claims, the bankruptcy court issued amended findings of fact and conclusions of law. The court concluded that Lenders' failure to publicly pronounce the postponement of the foreclosure sale on September 23, 2005, violated the "public announcement" requirement of HRS § 667-5 as well as the terms of the mortgage contract. Contrary to Debtor's assertion on appeal, the court found only a single violation of HRS § 667-5. As a remedy, the court voided the foreclosure sale. The court held that the improper postponement was also a breach of the mortgage contract, because the contract required that Lenders comply with state law in any foreclosure proceeding.

In addition, the court ruled that the improper postponement was an unfair and deceptive trade practice under HRS § 480-2. It awarded Debtor treble damages, under HRS § 480-13, for damages sustained as a result of the violation of § 480-2, calculating the damages sustained as (1) Debtor's lost equity in her house, (2) the rental value of the house for the time during which she lost possession of it, and (3) the attorneys' fees

Debtor expended defending against the state court ejectment action. The total money judgment was $417,761.66.

Finally, the court awarded Debtor additional attorneys' fees under two Hawaii statutes: HRS § 607-14, allowing fees for the prevailing party in contract claims, and HRS § 480-13(b)(1), allowing fees for the party establishing a violation of HRS § 480-2. The court allocated attorneys' fees equally between the contract claim and the HRS § 480-2 claim. Because HRS § 607-14 limits attorneys fees to twenty-five percent of the judgment on a contract claim, the court allowed recovery of only $38,945.01 for that portion of the attorneys' fees claim, a sum which it arrived at by calculating twenty-five percent of the value of Debtor's equity in the mortgaged property.

Lenders appealed the bankruptcy court's decision to the Bankruptcy Appellate Panel ("BAP"), challenging both the bankruptcy court's findings of liability and its calculation of damages and attorneys' fees. Debtor cross-appealed, challenging only the bankruptcy court's ruling that attorneys' fees under HRS § 607-14 should be limited to twenty-five percent of the value of Debtor's equity in the foreclosed property.

The BAP reversed the bankruptcy court on its findings of liability, holding that Lenders' actions (1) met the public announcement requirement of HRS § 667-5, (2) did not breach the mortgage contract, and (3) did not constitute an unfair or deceptive practice under HRS § 480-2. Because it found in favor of Lenders on the liability issues, the BAP did not reach the parties' challenges to damages and attorneys' fees. Debtor now appeals the decision of the BAP.

## II   STANDARD OF REVIEW

We review the decisions of the BAP de novo. *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys., Inc.)*, 482 F.3d 1118, 1123 (9th Cir. 2007). We apply the same standard of

review that the BAP applied to the bankruptcy court's ruling. *Id.* We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Stevens v. Nw. Nat'l Ins. Co. (In re Siriani)*, 967 F.2d 302, 303-04 (9th Cir. 1992).

## III    ANALYSIS

### A.    Hawaii Revised Statute § 667-5

**[1]**  HRS § 667-5 authorizes a foreclosure sale to be "postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf." In this case, we must first address whether the secretary's actions on September 23rd constituted a "public announcement" under the meaning of Hawaii law. When interpreting state law, we are bound by the decision of the highest state court. *Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1238 (9th Cir. 1990). Absent a controlling state court decision, our duty is to predict how the highest state court would decide the issue. *Id.* at 1239.

**[2]**  Neither HRS § 667-5 nor Hawaii case law defines the term "public announcement." Therefore, we apply Hawaii's rules of statutory construction to interpret the term. Hawaii courts follow "certain well-established principles of statutory construction." *Haw. Gov't Emps. Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 239 P.3d 1, 6 (Haw. 2010). Under those principles, " 'where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.' " *Id.* (quoting *Awakuni v. Awana*, 165 P.3d 1027, 1034 (Haw. 2007)). If there is ambiguity, we may consider context and legislative purpose to determine the meaning of the word or phrase. *Id.* at 6, 11 n.16.

**[3]**  Applying these principles, it is clear that any reasonable meaning of "public announcement" does not encompass Lenders' actions in this instance. The bankruptcy court turned

to the dictionary, noting that Merriam-Websters defines "announce" as "to make known publicly: PROCLAIM" and "announcement" as "public notification or declaration." No party suggests a different definition, and this interpretation captures the essence of what the statute requires: Mortgagees shall publicly announce the postponement of a foreclosure sale to a subsequent date.

**[4]** In this case, the secretary engaged in several conversations with individuals whom, based on the secretary's judgment, appeared as if they might have been present because they were interested in the foreclosure of Debtor's property. Even in these conversations, the secretary did not communicate that the sale had been postponed. The secretary did not, in private conversation or otherwise, announce that the Debtor's property would be sold on December 2, 2005. The bankruptcy court's conclusion, based on these facts, was that the secretary "never made an open, oral announcement to all those present of the date and time to which the auction was being postponed and she did not post or display such an announcement in written form." Lenders do not dispute this finding of fact, and it suffices to establish under the plain meaning of HRS § 667-5 that there was no public announcement of a postponement.

The BAP acknowledged that "[i]t is undisputed that the secretary did not make a 'public announcement' within its commonly understood or dictionary meaning." Nonetheless, it reasoned that the phrase must be given a "fair and reasonable construction" and interpreted in light of the purpose of the statute. The BAP concluded that the requirements of the statute could be met by "any mode of communication that reasonably achieves the spirit and purpose of the 'public announcement' requirement," which they reasoned was to "inform those who appeared at a foreclosure sale that it has been postponed."

**[5]** The BAP erred in relying on statutory context and purpose to introduce ambiguity into the meaning of "public

announcement" because, as it acknowledged, the meaning of the phrase is plain on its face. *See Ross v. Stouffer Hotel Co. Ltd.*, 879 P.2d 1037, 1044 (Haw. 1994) ("[W]here the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning."). However, even if use of these tools of statutory interpretation were appropriate, we would not find the BAP's conclusion persuasive. Hawaii's nonjudicial foreclosure statute affords mortgagees a quick and inexpensive alternative to judicial foreclosure but balances that accommodation by mandating compliance with minimal procedural requirements to protect mortgagors' interest in their property. *Lee v. HSBC Bank USA*, 218 P.3d 775, 779-80 (Haw. 2009). That statutory balance would be upset if mortgagees could dispense with those procedures they perceive as futile, or substitute procedures they believe achieve the "spirit and purpose" of the law. A reviewing court would frequently have no evidence of the adequacy of those substitute procedures other than the testimony of the mortgagee's agent. In this case, for instance, the bankruptcy court would be required to rely on the rough assessment of a legal secretary undertaking her first foreclosure postponement that none of the individuals present was interested in Debtor's property. Moreover, the secretary admitted she had signed a declaration stating that she had publicly announced the postponement when she knew she had not made a public announcement. We reject an approach that would force a trial court to rely upon evidence of this sort, and hold that Lenders' actions violated the plain meaning of "public announcement" in HRS § 667-5.

[6] We turn to the question of the proper remedy for Lenders' violation of HRS § 667-5. Hawaii law does not specify a remedy. The bankruptcy court, based on its reading of *Silva v. Lopez*, 5 Haw. 262, 1884 WL 6695 (1884), ruled that improper postponement required voiding the subsequent foreclosure sale. The BAP, on the other hand, believed that *Silva* does not provide controlling precedent, and reasoned that the Hawaii Supreme Court would have to look to other jurisdic-

tions to decide the issue. Relying on the trend in the majority of states, the BAP concluded that the Hawaii Supreme Court would draw a distinction between technical violations of foreclosure procedures which do not prejudice a mortgagor and substantive violations which do. The BAP held that a foreclosure sale should be voided only when a procedural violation is "significant, material, causes prejudice or otherwise contributes to the inadequacy of the price or other injury." The BAP concluded in this instance that Debtor had shown no prejudice from the foreclosure and was not entitled to any relief.

**[7]** With all respect to the BAP, we agree with the bankruptcy court that Hawaii precedent is clear and controlling. Mortgagee violation of the nonjudicial foreclosure requirements of HRS § 667-5, whether those violations are grievously prejudicial or merely technical, voids a subsequent foreclosure sale. *Id.* at *7. In *Silva*, the Hawaii Supreme Court voided a mortgage sale of real estate and livestock because the mortgagee did not comply with the conditions of the power of sale set out in the mortgage contract. *Id.* The *Silva* mortgagee erred by scheduling the foreclosure sale *one day too early*: under the mortgage contract, the power of sale could be exercised only after three weeks of notice and the *Silva* mortgagee had scheduled the sale after only twenty days of notice. *Id.* at *3, *5. The *Silva* court affirmed the trial court's ruling that "if the notice is insufficient, the sale under it is void and not merely voidable." *Id.* at *7. *Silva* establishes that under Hawaii law, even technical violations of foreclosure procedures void a subsequent foreclosure sale.

The BAP attempted to distinguish *Silva* on two grounds. First, the BAP noted that the *Silva* court did not explain why strict, rather than substantial compliance, with foreclosure procedure is required. However, this undercuts, rather than supports, the BAP's conclusion. The fact that the *Silva* court did not discuss prejudice or substantial compliance demon-

strates that this factor is irrelevant to the mortgagor's remedy under Hawaii law.

The BAP also distinguished *Silva* on the ground that there "the defect in the notice requirement was coupled with another irregularity — the livestock was not available for inspection at the auction sale." This assertion misreads *Silva*. In fact, the *Silva* court voided the sale of real estate solely on the basis of inadequate notice, and not because of the failure to display the auctioned cattle. The decision makes this clear: "[T]he third objection to the sale [that the mortgagee failed to display the cattle to bidders] . . . applies *only* to the sale of the chattels." *Silva*, 1884 WL 6695, at *3 (emphasis added).

That Hawaii law requires strict compliance with statutory foreclosure procedures is confirmed by the Hawaii Supreme Court's recent decision in *Lee*, a decision that was not available at the time the BAP issued its decision. The *Lee* court, answering a question certified to it by a federal district court, held that a foreclosure sale conducted after the mortgagors had cured their default was not valid. The court cited *Silva* for the proposition that the "foreclosure sale did not comply with the requirements of HRS section 667-5 and was, thus, invalid." *Lee,* 218 P.3d at 779. As in *Silva*, there was no discussion in *Lee* of the degree to which the violation of HRS § 667-5 prejudiced the mortgagor that would suggest that prejudicial impact is relevant under Hawaii's law. While *Lee* involved the violation of a different requirement of HRS § 667-5 than is at issue here, the court's reasoning encompasses the facts of this case.

Finally, we note that a strict compliance requirement is not so out of step with the law of other jurisdictions that we have reason to second-guess our interpretation of Hawaii law. The BAP is accurate in noting that the majority of states draw a distinction between procedural defects that are insignificant and those that are prejudicial enough to render a foreclosure sale void or voidable. *See, e.g., Gilroy v. Ryberg*, 667 N.W.2d

544, 553-54 (Neb. 2003) (describing the majority approach and collecting cases). However, this trend is far from unanimous. Several states have long required strict compliance with nonjudicial foreclosure statutes. *See Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (mortgagee's failure to perform "ministerial act" of recording appointment of successor trustee grounds for voiding sale); *Bottomly v. Kabachnick*, 434 N.E.2d 667, 669-70 (Mass. App. Ct. 1982) (failure in notice of sale to identify the holder of mortgage voids sale). Other states have begun to strictly construe the terms of recently enacted statutes designed to protect mortgagors. *See Aurora Loan Servs., LLC v. Weisblum*, 923 N.Y.S.2d 609, 614 (N.Y. App. Div. 2011) (strict compliance with statutorily mandated notice requirements is condition precedent to foreclosure, without consideration of prejudice to mortgagor); *EMC Mortg. Corp. v. Chaudhri*, 946 A.2d 578, 586 (N.J. Super. Ct. App. Div. 2008) ("[A] lender's substantial compliance with the contents of a notice of intent, sent by a lender prior to initiation of foreclosure, . . . was not authorized by the statute's terms." (internal quotation marks omitted)). Hawaii's approach, therefore, might place it in the minority, but does not place it out of the mainstream.

**[8]** We conclude that Lenders' failure to postpone properly the foreclosure sale did violate HRS § 667-5 and that the proper remedy was avoidance of the sale.

## B.   Breach of Contract

**[9]** The bankruptcy court ruled that the terms of the parties' mortgage agreement specified that Lenders could foreclose only in compliance with the procedural requirements of HRS § 667-5. Lenders do not dispute the court's interpretation of the contractual language. Therefore, because Lenders' improper postponement of the foreclosure sale violated HRS § 667-5, it also constituted a breach of contract.

**[10]** Lenders' contractual breach is an alternative ground upon which the bankruptcy court properly voided the foreclosure sale. Lenders argue, however, that damages for the breach of contract should be subject to standard causation requirements, and that the breach was not the cause of the foreclosure. Lenders' discussion of general contract principles of causation is not persuasive in the context of the mortgage at issue. The bankruptcy court read the mortgage contract as requiring compliance with the nonjudicial foreclosure statute as a condition precedent to Lenders' right to exercise the power of sale in the contract. We agree. In the context of this interpretation of the mortgage, the avoidance of the sale is consistent both with case law particular to mortgage agreements and with general contract principles. *See Silva*, 1884 WL 6695, at *7; *Stevens v. Cliffs at Princeville Assocs.*, 684 P.2d 965, 969 (Haw. 1984) ("If the condition is not fulfilled, the right to enforce the contract does not come into existence." (internal quotation marks omitted)).

## C.   Hawaii Revised Statute § 480-2 and § 480-13

**[11]** HRS § 480-2(a) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Consumers who establish a violation of § 480-2 are entitled to three-fold damages under HRS § 480-13 for those "damages sustained" as a result of the defendant's deceptive actions. HRS § 480-13(a)(1). Whether a practice is deceptive or unfair is "ordinarily a question of fact," *Balthazar v. Verizon Hawaii, Inc.*, 123 P.3d 194, 197 n.4 (Haw. 2005), subject to review under a clearly erroneous standard.

The test for whether a practice is "deceptive" under HRS § 480-2 is distinct from whether a practice is "unfair," and both tests are established by case law rather than by statute. *State ex rel. Bronster v. U.S. Steel Corp.*, 919 P.2d 294, 313 (Haw. 1996). "A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3)

the representation, omission, or practice is material.' " *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir. 2010) (quoting *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (Haw. 2006)) (alterations omitted). This inquiry is objective — the test is whether the practice was "capable of misleading a reasonable consumer." *Id.* at 1089. There need not be an intent to deceive nor actual deceit. *Courbat*, 141 P.3d at 435 n.9.

**[12]** The bankruptcy court found that failure to make a public announcement "is likely to mislead a consumer acting reasonably under the circumstances . . . . Proper notice of the actual date of a foreclosure auction is essential to ensure that foreclosed properties bring adequate prices and that the public has an appropriate opportunity to bid." The court's factual finding is a reasonable one to which we must defer.

The BAP's reversal of this finding is premised on two errors. First, by focusing on whether there were, in fact, any consumers in the vicinity that would have heard a public announcement, the BAP failed properly to apply the requisite objective test. Given that "actual deception need not be shown; the capacity to deceive is sufficient," *State ex rel. Bronster*, 919 P.2d at 313, the BAP's concern with the fact that no potential buyers appeared to be present was an improperly subjective inquiry into whether there was actual deception.

Second, the BAP did not afford the bankruptcy court's factual finding the required degree of deference when it reasoned that it was "not required to accept [the bankruptcy court's] conclusions as to the legal effect of [its factual findings]." Whether a reasonable consumer would likely be misled by a practice is a question of fact unless "no reasonable person would determine the issue in any way but one." *Courbat*, 141 P.3d at 436 (internal quotation marks omitted). Under this standard, the bankruptcy court's determination that improper postponement of this sort would deceive a reasonable con-

sumer is not clearly erroneous. *See Anderson v. City of Besse-mer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Because we affirm the bankruptcy court's finding that Lenders' improper postponement was a deceptive practice under HRS § 480-2, we need not consider whether it was also an unfair practice.

[13] However, our conclusion that Lenders' improper postponement amounted to a deceptive practice does not automatically entitle Debtor to monetary damages.[2] Under HRS § 480-13(b)(1), a consumer injured by a violation of § 480-2 "[m]ay sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages." Under this statute, consumers are entitled to damages for a violation of HRS § 480-2 only if they show that those acts "cause private damage." *Ai v. Frank Huff Agency, Ltd.*, 607 P.2d 1304, 1312 (Haw. 1980), *overruled in part on other grounds by Robert's Haw. Sch. Bus. Inc. v. Laupahoehoe Transp. Co.*, 982 P.2d 853 (Haw. 1999); *see also Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179, 1216 (Haw. 2006) (to receive damages under HRS § 480-13 the injured consumer must show "(1) a violation of HRS chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages" (footnotes omitted)).

Any injury must be fairly traceable to the defendant's actions. *Flores v. Rawlings Co., LLC*, 177 P.3d 341, 355 n.23

---

[2]We do not consider Lenders' argument that they cannot be held vicariously liable for the actions of an independent contractor because that argument was not made before the BAP and was therefore forfeited. *See Resolution Trust Corp. v. First Am. Bank*, 155 F.3d 1126, 1129 (9th Cir. 1998) (issues raised for first time before appellate court are generally forfeited).

(Haw. 2008). Under HRS § 480-13, the injury is measured through standard expectation damages, i.e., damages sufficient to make the plaintiff whole. *Leibert v. Fin. Factors, Ltd.*, 788 P.2d 833, 836-37 (Haw. 1990). The Hawaii Supreme Court has emphasized that " '[d]eception [is] the evil that consumer fraud statutes seek to rectify.' " *Flores*, 177 P.3d at 357 (second alteration in original) (quoting *Zanakis-Pico v. Cutter Dodge, Inc.*, 47 P.3d 1222, 1231 (Haw. 2002)).

**[14]** The proper calculation of damages and causation are questions of fact under Hawaii law, which we do not disturb unless they are clearly erroneous. *Kato v. Funari*, 191 P.3d 1052, 1058 (Haw. 2008) (damages are question of fact); *Doe Parents No. 1 v. State Dep't of Educ.*, 58 P.3d 545, 569 (Haw. 2002) (causation is question of fact). In this instance, however, the bankruptcy court failed to make the requisite factual findings. *See Jess v. Carey (In re Jess)*, 169 F.3d 1204, 1208-09 (9th Cir. 1999) (Bankruptcy Rule 7052 requires the bankruptcy court to make findings of fact and conclusions of law). While the bankruptcy court's decision acknowledges that causation is a required element of Debtor's case, the court made no finding — explicit or otherwise — that the enumerated damages were caused by and fairly traceable to Lenders' improper postponement. Rather, the court simply listed as damages Debtor's loss of equity in her property, the rental value of the property for the time Debtor was apparently excluded from possession, and attorneys' fees accrued in the state court ejectment action.

Debtor urges us to overlook this omission and to construe the bankruptcy court's calculation of damages as including an implicit factual finding of causation. If we were to adopt Debtor's suggestion, which we do not, we would be compelled by the record to conclude that the bankruptcy court's "implicit" finding of causation *was* clearly erroneous. The damages the bankruptcy court awarded all flow from the foreclosure on Debtor's home and appear to give Debtor an inappropriate windfall. This seems irreconcilable with the

bankruptcy court's finding that Debtor did not experience foreclosure of her home *because of* Lenders' imperfect postponement procedure. As the bankruptcy court phrased it, "There is no question, . . . that the Mortgage was in default and that the mortgagee was entitled to foreclose. The only question is whether the proper party foreclosed the Mortgage in the proper manner." In sum, the court's findings of fact appear to establish that Debtor's losses "result[ed] from" her default, rather than Lenders' failure to shout out the postponement of the foreclosure. *Haw. Med. Ass'n*, 148 P.3d at 1216.

**[15]** However, rather than reading an erroneous finding of causation into the bankruptcy court's decision, we follow our ordinary procedure when a necessary factual finding is absent, and remand the case to the bankruptcy court to make the proper requisite findings of fact under HRS § 480-13. *See Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1124 (9th Cir. 2000). This is the appropriate course because the factual record may not be complete — Debtor suggests, for example, that she can prove that but for Lenders' improper postponement, she might have succeeded in curing her default. This fact, if proven, might establish that Debtor's temporary loss of possession of the property was "fairly traceable" to Lenders' deceptive practice. *Flores*, 177 P.3d at 355 n.23. Therefore, on remand the bankruptcy court must determine the difference, if any, between Debtor's situation had Lenders properly postponed the foreclosure sale and Debtor's actual situation, given that the sale was improperly postponed. This framing properly narrows the inquiry to the damage caused by Lenders' deceptive postponement. *Id.* at 357.

## D.   Attorneys' Fees

**[16]** We also vacate the bankruptcy court's order awarding attorneys' fees and remand for calculation of reasonable attorneys' fees in light of our remand of the damages-causation issue in Debtor's HRS § 480-13 claim. *See UFJ Bank Ltd. v. Ieda*, 123 P.3d 1232, 1233 (Haw. 2005) (vacatur of attorneys'

fees judgment and remand appropriate where judgment on which fees are based is remanded). Because the issues are "likely to arise again on remand" we address the parties' challenges to the bankruptcy court's original calculation of attorneys' fees. *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1216 (9th Cir. 1994).

First, on remand, the bankruptcy court may, in its discretion, consider evidence of the settlement offer purportedly made by Lenders early in the course of this litigation. The bankruptcy court initially ruled that it was prohibited from admitting evidence of the settlement offer by Federal Rule of Evidence Rule 408. With the benefit of our recent decision in *Ingram v. Oroudjian*, 647 F.3d 925 (9th Cir. 2011) (per curiam), it is now clear that this evidence is admissible. In *Ingram* we adopted the reasoning of the Third Circuit's opinion in *Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009), and held that Rule 408 does not preclude admission of evidence of a settlement agreement for the purpose of calculation of attorneys' fees. *Ingram*, 647 F.3d at 927. Therefore, the bankruptcy court may consider evidence of a settlement offer to the degree such evidence is relevant to the calculation of reasonable attorneys' fees under Hawaii law.

**[17]** Second, Debtor challenges the bankruptcy court's decision limiting the portion of attorneys' fees allotted to the breach of contract claim to twenty-five percent of Debtor's lost equity on the house. The bankruptcy court's ruling was based on the twenty-five percent limit contained in HRS § 607-14, the statute governing attorneys' fees in contract cases. That statute states that "[I]n all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party . . . a fee that the court determines to be reasonable; . . . provided that this amount shall not exceed twenty-five per cent of the judgment." HRS § 607-14.

Debtor argues that the twenty-five percent limit does not apply to her under the exception created in *Food Pantry, Ltd.*

*v. Waikiki Business Plaza, Inc.*, 575 P.2d 869, 880 (Haw. 1978), because the avoidance of the foreclosure sale was not a monetary judgment subject to the twenty-five percent limit. In *Food Pantry*, the Hawaii Supreme Court held that an action to enforce a lease did not trigger the twenty-five percent limit because it "could not result in a money judgment to which the twenty-five percent limitation could be applied." *Id.*

**[18]** The bankruptcy court did not err in applying the twenty-five percent limit on attorneys' fees. The *Food Pantry* exception applies only "if no money damages are sought or awarded, as in a complaint for declaratory judgment, [where] there is no monetary amount on the basis of which to calculate the twenty-five percent statutory ceiling." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 839 P.2d 10, 35 (Haw. 1992). Debtor's complaint requested *only* damages and attorneys' fees for her breach of contract claim. The monetary damages for the contract claim were easily discernible as Debtor's lost equity in her property, and the bankruptcy court noted that Debtor later "elected to recover the Mortgaged Property" in lieu of monetary damages. Debtor's election of remedies does not render the value returned to Debtor an "economic incident of the judgment" that can escape the twenty-five percent limit. *DFS Group L.P. v. Paiea Props.*, 131 P.3d 500, 504 n.5 (Haw. 2006).

## IV   CONCLUSION

We AFFIRM the decision of the bankruptcy court with respect to its findings of liability for a violation of HRS § 667-5, a violation of HRS § 480-2, and breach of contract. We also AFFIRM the bankruptcy court's order voiding the foreclosure sale of Debtor's property. We VACATE the bankruptcy court's award of money damages under § 480-13 and attorneys' fees under HRS § 607-14 and HRS § 480-13(b)(1), and we REMAND so that the bankruptcy court may (1) make the necessary findings of causation and damages under HRS § 480-13 and (2) properly calculate attorneys' fees.

AFFIRMED in part, VACATED and REMANDED in part.

The parties shall bear their own costs on this appeal.