Ruffin, Chief Justice,
 

 after stating the case as above, proceeded as follows. As the last point is unconnected with the others, it may be disposed of at once. From the terms of the exception we must take it, that the executions, though prior to the registration, were tested after the execution of the deed. The objection is, therefore, founded exclusively on the Revised Statute, ch. 37, sec. 24, (act of 1829, ch. 20;) which enacts that no deed of trust or mortgage shall be valid to pass property as against creditors, but from the registration. Our opinion is, that the act does not embrace every deed in which a trust happens to be declared; and that the instrument before us is not within it. The object was-to give notice of encumbrances; and the
 
 “
 
 deed of trust” meant in the act, is that species, which though of recent origin, has grown into general use
 
 as a security for debts,
 
 in the nature of a mortgage with a power of sale. This results from the manner in which the two kinds of conveyance, “ deed of trust” and “ mortgage,” are associated in that section of the act. But the special provision in the 29th section of the same act, as now digested in the Revised Statutes, for the probate, and registration of marriage contracts, prevents the application to them of the general words of the 24th section. This particular species of “ deed of trust” is to be governed by its own peculiar regulations. This exception is, therefore, unfounded.
 

 Another exception, on the part of the defendant, as to the proof of the articles by testimony to the handwriting of the plaintiff as the subscribing witness thereto, we likewise deem to be unfounded. It was admitted at the bar, that the evidence would have been proper, if the law had, after his attestation, thrown the interest on the plaintiff. But it was con tended that, in a suit brought by the witness himself, the evidence is not competent, when the plaintiff acquires the interest by his own act. Were the question new, we should at least hesitate on it, as' the distinction seems to have much reason in it; and, indeed, with, respect to endorsements to
 
 *102
 
 subscribing witnesses to negotiable instruments, it is estabfished at law.
 
 Hall
 
 vs. Bynum, 2 Hay. Rep. 329. But the rule seems, to be confined to that particular case. The books contain many instances, in recent times, in which proof has been received of the handwriting, where the subscribing witness had become the administrator of the obligee, or the executor of the obligee; or where the obligee and Witness had intermarried. From these cases, we cannot distinguish the present in principle; and, therefore, we think the articles well proved.
 

 But the important consideration is, whether the articles, after they were established, are sufficient to sustain the settlement under which the plaintiff claims title? Upon that, the defendant’s objection at the trial is unanswerable. Valid ante-nuptial contracts will undoubtedly support a settlement made after marriage in conformity to them. There are both a moral and an equitable obligation, which render the articles a good consideration for the settlement. But without such articles, a post-nuptial settlement is voluntary and void under the Stat. 13th Eliz., (see 1 Rev. Stat. ch. 50, sec. 1,) as has long been settled. So it necessarily must be, when by the settlement the husband secures to the wife or issue of the marriage more than by the articles he engaged. This settlement goes much beyond the articles, and deprives the husband of a valuable interest, which the articles not only left in him, but expressly secured to him. For that excess then, at the least, the deed to the plaintiff must be invalid: that is to say, if the case is to rest on the articles by themselves.— But it thence follows, on a settled principle, that the settlement is not good even for the life of the wife. The deed is avoided by the act of 1715, or 13th Eliz., as being, at least in part, not founded
 
 on
 
 a valuable consideration, but voluntary. There is but one trust declared in this deed, and that is in favour of Mrs. Homer. In such a case the court cannot apportion the operation of the instrument to its considerations, and hold it in part bad, and in part good, as at common law; but must execute the stern condemnation of the statute,, which says it shall be utterly void.
 

 But the plaintiff asks to supply the defect in the articles in
 
 *103
 
 this respect, by the verbal agreement between the parties, and the alleged fraud by Homer on his intended wife. Although not necessary to the decision of the cause, yet, as the parties have raised the questions in the record and in the argument, it is perhaps our duty to dispose, in the first place, of the objections as to the modes of proof on those points.
 

 We have so lately had occasion to say, in a similar case, that husband and wife cannot be witnesses for each other, that we need now only refer to that decision.
 
 Pearson
 
 vs.
 
 Daniel, 2
 
 Dev. & Bat. Eq. Rep. 360.
 

 Still less, if possible, are the husband’s subsequent declarations competent against his creditors. They are not privies with him,
 
 bat
 
 claim against, and not merely under, him.
 
 Briley
 
 vs. Cherry, 2 Dev. Rep. 2.
 

 The remaining part of the defendant’s objection to the proposed evidence of the plaintiff, is to its insufficiency or irrelevancy. If the supposed parole agreement and fraud, though established, would not tend to sustain the deed, it is useless and illegal to hear the proof. Against the husband, or those claiming under him as volunteers, equity would set up such a parole agreement, unless it be specially required by statute to be in writing; as in England is the case by Stat. 29, Charles 2; and a fraud in obtaining from the woman the execution of an instrument, which purposely omitted a material part of the agreement, would doubtless be redressed, notwithstanding such a statute, But in respect of creditors, the act of 1785, Rev. ch. 238, (see 1 Rev. Stat. ch. 37, sec. 29, 30,) establishes, we think, a different and opposite principle. The effect of that act is to prevent any verbal agreement or transaction between the intended husband and wife, from obstructing a creditor. It is entitled “an act directing that marriage settlements and other marriage contracts shall be registered,
 
 and for preventing injury to
 
 creditors.” Aiter reciting that marriage settlements and other marriage contracts have been frequently made and kept secret, whereby the possessors, upon the credit of the apparent property, have been enabled to contract great debts, to the manifest deception and injury .of their creditors: For remedy whereof for the future, it is enacted, that all marriage settlements and
 
 *104
 
 other marriage contracts, whereby any estate shall be secure(^ to ^le wife or husband, shall be proved and registered as therein mentioned; and all not so proved and registered, sjj_ajp void against creditors. This language shews clearly an intention of the Legislature; that as to his creditors the vesting of the property of the wife in the husband,
 
 jure mar
 
 iti, should not be prevented by
 
 any secret
 
 agreement, whether written or verbal. The secrecy, of the agreement is the evil on which the preamble dwells, as tending to deceive creditors. The act designs to take from the parties all opportunity of practising such deception,' and thus to
 
 “prevent
 
 injury to creditors,” by giving to all such arrangements that degree of publicity which can be derived from registration. The enactment, therefore, is, that if not proved, within six months, and registered within one month thereafter, they shall be void. It is not sufficient that the settlement should be written and registered. That requires, as has been before mentioned, the support of the agreement before marriage; and the act requires
 
 that
 
 agreement, as well as the settlement, to be registered — using the words “
 
 all
 
 marriage settlements and
 
 other
 
 marriage contracts.” We are to go back, therefore, to the first agreement; and if that be found defective, the post-nuptial settlement made in execution of it, cannot stand. The proposition is self-evident that those agreements must be in writing, because in that form alone do they admit of registration. And the law must be the same, when there is an attempt to vary a written and registered agreement by parole, to the prejudice of creditors. To allow it would amount to a repeal of the act.
 
 Gregory
 
 vs. Perkins, 4 Dev. Rep. 50.
 

 It is true, this shuts the door against correcting mistakes in drawing those instruments, and leaves an opening for practising frauds on confiding women. Generally, however, they havé the advantages of friends and counsel in such treaties; and, therefore, there is no great danger of their being over-reached. But the answer is, that the Legislature must have been aware of those possibilities; and, being aware of them, thought they would so seldom occur as, practically, not to amount to a grievance, or, at least, to one at all compar
 
 *105
 
 able tó those arising out of “ the
 
 frequent
 
 secret contracts” between intended husbands and wives; Therefore, .the act makes a registered, and, of course, a written instrument the only evidence against the husband’s creditors that “ any estate has been secured to the wife.”
 

 Our opinion therefore, is, that the deed to the plaintiff does not pass the title of the slaves to him; and that no evidence of the verbal agreement or fraud alleged ought to have been admitted. The remedy of Mrs. Homer is, upon the articles in equity; where, for any thing now seen to the contrary, they will be specifically decreed in their present form.
 

 Per. Curiam. Judgment reversed.